Donovan BLISSETT, Plaintiff,

v.

P.K. Deputy EISENSMIDT, D.S.S., Sgt. Casey, Officer Johnson, Sgt. Green, Thomas Graham, Timothy Mulhall, A. Connors, R.N. Medical Dept., J. Heildenblock and Dr. Foote, Defendants.

No. 83–CV–218.

United States District Court, N.D. New York.

Sept. 18, 1996.

450

Claudia A. Smith, Kingston, NY, Stanley L. Cohen, New York City, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Ronald S. Wu, Assistant Attorney General, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### BACKGROUND

Following a three day trial of this prisoner civil rights action, the jury returned a verdict, with the exception of one defendant,[1] in favor of plaintiff. Guided by a verdict form, the jury found that defendants Casey,[2]

---

1. Crediting the testimony of defendant Johnson, that he was not in the vicinity at the time of the events of which plaintiff complained, the jury found that he did not violate plaintiff's Eighth Amendment rights; nor, it found, did he commit a battery upon plaintiff. In light of the jury's verdict in this regard, all future references herein to the defendant Corrections Officers ("COs") or the defendants generally shall be read as excluding Mr. Johnson.

2. During the course of this protracted litigation, defendant Casey died, and Lita Casey, as executrix of the estate of Daniel Casey was substituted for him as a party defendant in this action. See Fed.R.Civ.P. 25.

Greene, and Mulhall, all of whom were COs at Great Meadow Correction Facility ("the facility") during the relevant time frame, violated plaintiff Donovan Blissett's Eighth Amendment right to be free from cruel and unusual punishment when they allegedly used excessive force on him. At the same time, however, the jury also found that none of those defendants committed a battery upon plaintiff. The jury did find, though, that defendant Anne Connors, a nurse at the facility, violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and that she committed a battery upon him when she injected him once in each buttock with a tranquilizer. Based upon those findings, the jury awarded plaintiff actual damages in the amount of $5,600.00. In addition, the jury expressly found that defendants Casey, Connors, Greene, and Mulhall acted "maliciously or wantonly against the plaintiff so as to be subject to punitive damages[.]" Jury Verdict Form at 5, ¶ 15 (Docket # 164).

Because, among other things, this case is before the court on a motion for judgment as a matter of law ("JMOL"), the court notes that at the close of the case, and prior to submitting this case to the jury, the defendants moved for that same relief pursuant to Rule 50. As the basis for that motion, defendants argued that plaintiff had failed to establish a *prima facie* cause of action under 42 U.S.C. § 1983 in that there was no proof of injury.[3] Transcript ("Tr."), Vol. I at 230. Defendants further argued that plaintiff did not come forth with adequate proof to establish that he had been assaulted; nor did he establish that any of the defendants had committed a battery upon him. *Id.* Significantly, defendant Connors did not move for JMOL on the grounds of qualified immunity. After listening to argument by both counsel, the court denied defendants' motions, with two exceptions. With plaintiff Blissett's consent, the court dismissed the action as against defendant Dr. Foote. *Id.* at 241. The court also granted defendant's motion to

dismiss plaintiff's pendent state law assault claim. *Id.*

Given the jury's determination that the defendants should be subject to punitive damages, the court proceeded with a hearing on that issue, at which each of them testified. At the close of that proof, the jury returned a separate verdict form, awarding punitive damages as follows:

| | |
|---|---|
| Estate of Daniel Casey | $21,422.00 |
| Anne Connors | $31,650.00 |
| Ralph Greene | $ 4,878.00 |
| Timothy Mulhall | $22,031.00 |

Punitive Damages Jury Verdict Form (Docket # 168). Immediately following that verdict, defendants Casey, Greene and Mulhall moved to vacate the punitive damages awards as against them on the basis that such awards were excessive in light of the facts, and because the jury had not found that any of those three defendants had committed a battery upon plaintiff. Tr., Vol. II at 429. Likewise, defendant Connors moved to vacate the punitive damages award as against her because it was excessive in that, in her opinion, there was no evidence that she actually inflicted any damage upon plaintiff. *Id.* The court denied those motions. *Id.* at 430. On July 8, 1996, the Clerk of the Court entered judgment in accordance with the jury's verdict as outlined above.

### DISCUSSION

Presently before the court is defendants' motion for JMOL pursuant to Fed.R.Civ.P. 50. In the alternative, the defendants seek a new trial pursuant to Fed.R.Civ.P. 59. Defendants offer four separate reasons as to why they believe they are entitled to such relief. Raising the issue for the first time on this post-verdict, post-judgment motion, the defendant COs contend that they are entitled to "judgment notwithstanding the verdict" (an outdated phrase in light of the amendments to Rule 50, which became effective December 1, 1991[4]) because the jury's verdict is inconsistent in that the jury found that those defendants violated plaintiff's Eighth Amendment right to be free from cruel and

---

**3.** At the court's suggestion, at the close of the plaintiff's proof, the defendants reserved their right to move for JMOL under Rule 50. Tr., Vol. I at 121.

**4.** *See* n. 8 *supra.*

**452**

unusual punishment, while at the same time it also found that those same defendants did not commit a battery upon plaintiff.[5]

Given that the jury found that defendant Connors violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and that she committed a battery upon plaintiff, obviously, defendant Connors cannot argue that the verdict against her was inconsistent. Instead, defendant Connors asserts that she is entitled to JMOL on the grounds of qualified immunity. Next, the estate of Daniel Casey maintains that the $21,422.00 punitive damage award against him must be "vacated" based upon § 11–3.2(a)(1) of the New York Estates, Powers and Trusts Law ("EPTL"). Defendants' Memorandum of Law ("Def.Memo.") at 4. That statute states, in relevant part, "No cause of action for injury to person or property is lost because of the death of the person liable for the injury. For any injury, an action may be brought or continued against the personal representative of the decedent, but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury." N.Y. EST. POWERS & TRUSTS § 11–3.2(a)(1) (McKinney 1967). Finally, defendants Connors, Mulhall, and Casey argue that the punitive damage awards against them "should be reduced" because such awards were excessive in that, relatively, they constitute a "large percentage" of the net worth of each of those defendants.[6] Def. Memo. at 5.

On September 10, 1996, the court heard oral argument with respect to these defense motions. The court reserved decision.

Careful consideration of the parties' arguments, and the relevant case law as discussed herein, convinces the court that the defendant COs are not entitled to JMOL on the basis of this allegedly inconsistent verdict. Nor is defendant Connors entitled to JMOL based upon qualified immunity. Nonetheless, the court cannot allow the verdict to stand in its current form. The court grants JMOL in favor of the estate of Daniel Casey because, as will be explained herein, the court concludes that punitive damages are not recoverable against the estate in this section 1983 action. Likewise, as discussed below, under the practice of remittitur, the court reduces, as excessive, the punitive damage awards against defendants Connors and Mulhall.

## I. Rule 50 v. Rule 59

■ Before addressing the defendant COs' contention that the verdict against them was inconsistent, the court briefly observes that these defendants have improperly relied upon Rule 50 in bringing this motion. Rule 50 expressly requires that a motion thereunder " 'specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.' " *Holmes v. United States*, 85 F.3d 956, 962 (2d Cir.1996) (quoting Fed.R.Civ.P. 50(a)(2)). Such a motion "must be made '**before** the submission of the case to the jury,' ..., and, if rejected, may be renewed after the jury verdict." *Id.* (emphasis added). Thus, it is well established that "[t]ogether, Rules 50(a) and (b) 'limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict.' "[7] *Id.* (quoting *Lam-*

---

**5.** In arguing that the jury verdict against them was inconsistent, in their memorandum of law the defendant COs also refer to an Eighth Amendment claim based upon the conditions of plaintiff's confinement. As these defendants should be well aware, that issue was not submitted to the jury. Thus, there is no need for the court to concern itself with this aspect of defendants' argument.

**6.** Even though, after the jury returned the punitive damage verdict, defendant Greene challenged the $4,878.00 punitive damage award against him as excessive, he does not renew that motion herein. Therefore, unless defendant Greene prevails on his argument that the verdict

is inconsistent, the verdict against him will remain unaltered.

**7.** " '[T]hough Rule 59(b) was amended in 1991 to replace the term "judgment n.o.v." with the phrase "judgment as a matter of law," the substance of the Rule was not changed[.]' " *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir.1995), *cert. denied sub nom.*, *Village of Airmont, N.Y. v. LeBlanc–Sternberg*, —— U.S. ——, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (2d Cir.1996) (quoting *Piesco v. Koch*, 12 F.3d 332, 340 (2d Cir.1993)). Therefore, the fact that most, if not all, of the cases herein refer to JNOVs or directed verdicts does not undermine their applicability.

*bert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir.1993)) (quoting in turn *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994)) (other citation omitted). According to the Second Circuit, this "specificity requirement is obligatory ... and its purpose is to ensure[ ] that the other party is made aware of any deficiencies in proof that may have been overlooked." *Id.* (internal quotations and citations omitted). "Requiring a party to state specific grounds for its Rule 50(a) motion put[s] a party on notice of potential deficiencies in its proof before the case is submitted to the jury." *Id.* (internal quotations, citation and footnote omitted).

■ In the present case, obviously the jury had not yet returned its verdict when the defendants moved for JMOL pursuant to Rule 50. Therefore, it would have been impossible to raise on that motion the issue of this allegedly inconsistent verdict, and so the defendant COs have mistakenly relied upon Rule 50 as the procedural mechanism for their motion. Assuming that the COs are able to show an inconsistency in this verdict, and assuming that there is no procedural bar to such relief, they would not be without recourse. If they can establish that the verdict against them is inconsistent, they would be entitled to a new trial. *See, e.g., Kelly v. Fischer*, CIV. 1691, 1989 WL 135914, at *3 (S.D.N.Y. Nov. 8, 1989) (Although the plaintiff lacked standing to move for JNOV for the first time post verdict on the grounds that the verdict was inconsistent, he could make such a challenge in seeking a new trial under Rule 59.). Accordingly, it is within the procedural framework of a Rule 59 motion for a new trial that the court must examine the defendant COs' argument that the verdict against them was inconsistent.

**II.  Waiver**

Having clarified the governing legal standard, still, the court is not in a position to consider the merits of defendants' assertion that the verdict was inconsistent. The court cannot yet consider the merits of that argument because there is another procedural issue which, surprisingly, plaintiff did not raise; and that is whether defendants waived their right to challenge this verdict as inconsistent because they did not specifically raise that argument before now.[8] Fairly recently, in *Bseirani v. Mahshie*, 881 F.Supp. 778 (N.D.N.Y.1995), Judge Munson reiterated the general principles, gleaned from Second Circuit case law, underlying the doctrine of waiver as it pertains to "some logical inconsistency within a verdict." *Id.* at 784. As this court stated during oral argument, those principles are as follows:

> While courts within the Second Circuit do not employ a *per se* waiver rule where a party fails to make a timely objection to an inconsistent jury verdict, such a failure generally carries some weight in the court's analysis.... Case law supports the view that a party *may* waive its right to object to answers to a special jury verdict where the objection is not raised before the jury is discharged.... Waiver is particularly appropriate where counsel is or should be aware of the inconsistency in the verdict, and where resubmission to the jury would resolve the ambiguity, ..., because the purpose of waiver is to promote the efficiency of trials by allowing the original deliberating body to reconcile inconsistencies without resort to the presentation of evidence to a different body....

*Id.* (internal quotations and citations omitted) (emphasis in original).[9]

Relying upon those principles, the *Bseirani* court held that the defendant "waived his right to a new trial based on the jury's allegedly 'untenable' verdict [,]"[10] because

---

**8.** Only during oral argument, when the court suggested the possibility of a waiver, did plaintiff quickly adopt this argument.

**9.** Regardless of whether the jury verdict form employed in this case is considered a special verdict under Rule 49(a) or a general verdict accompanied by written interrogatories as Rule 49(b) allows, the Second Circuit has determined

that the waiver principles just outlined should be employed on a "case-by-case" basis. *Denny v. Ford Motor Co.*, 42 F.3d 106, 111 (2d Cir.1994).

**10.** There, the defendant argued that the damage award was duplicative on the theory "that the four causes of action submitted to the jury were alternative pleadings based on the same set of

the "defendant neither objected to the answers returned by the jury nor moved for resubmission to resolve the ambiguity he alleges." *Id.* at 784 and 785. The court also relied upon the fact that the claimed ambiguity could have been resolved before the jury was discharged if the defendant had timely raised his objections, thus "depriv[ing] the court and the parties of their most effective and efficient means of resolving the issue of whether the award was duplicative." *Id.* at 784–785. Finally, the court persuasively observed that "[a]s defendant's counsel assisted in the preparation and agreed to the context of the special verdict form, he was certainly on notice of the potential that the jury could have responded as it did." *Id.* at 785.

■ In terms of waiver, the facts of *Bseirani* are remarkably similar to those in the present case. Although defense counsel did not assist in the preparation of the verdict form, he did agree to its contents, and thus was on notice that the jury could possibly respond as it did, finding a constitutional violation, but no battery as against the COs. Furthermore, despite several opportunities to do so, these defendants did not object to the answers to the verdict form as inconsistent before the jury was discharged. They did not raise the issue of this claimed inconsistency immediately after the jury announced its verdict on July 3, 1996. Nor did they bring this issue to the attention of the court and/or opposing counsel before the punitive damage phase of the trial which, due to the holiday weekend, was not until four days later on July 8, 1996. Because the jury had not been discharged at that point, defendants could easily have raised the specter of an inconsistent verdict before the punitive damages hearing, but they did not. Furthermore, arguably the defendants had one last chance to object to this verdict as inconsistent, and that was at the close of the proof on punitive damages, but before the jury was finally discharged. Given that the defendant COs did not object to the verdict as inconsistent before the jury was discharged and be-

cause defense counsel should have been aware of this purported inconsistency, if not immediately after the July 3, 1996, verdict, then certainly by the time the jury was finally discharged on July 8, 1996, in combination with the fact this claimed inconsistency could easily have been resolved by resubmitting the matter to the jury,[11] the court finds that the defendant COs waived their right to object to this verdict as inconsistent by not seizing the opportunity to do so before the jury was discharged. *See Grant v. Westinghouse Elec. Corp.,* 877 F.Supp. 806, 814 (E.D.N.Y.1995) (and cases cited therein).

■ A contrary holding would, in the words of Judge Hurley, "result in the jury's work-product being unfairly scuttled, to the detriment of plaintiff[ ] and plaintiff['s] attorneys." *Id.* Moreover, the silence of the defendant COs "prevented any claimed defect 'from being remedied on that day, by that jury, based on evidence presented over the course of the ... trial.'" *In re Wedtech Corp.,* 196 B.R. 274, 279 (Bankr.S.D.N.Y. 1996) (quoting *Grant,* 877 F.Supp. at 815). And, because the jury has been discharged, the granting of a new trial here would require retrying this case before a new jury—a result which "runs counter to the sanctity normally accorded such verdicts and would encourage rampant abuse of Rule 49." *Manes v. Metro–North Commuter Railroad,* 801 F.Supp. 954, 960 n. 4 (D.Conn.1992), *aff'd without pub'd opinion,* 990 F.2d 622 (2d Cir. 1993). Although the court is not necessarily attributing this intent to defense counsel, the court agrees with Judge Neva's observation in *Manes,* that "refusal to apply the waiver rule here would merely encourage a dissatisfied party to withhold timely notice of problems, problems that likely could be cured at trial by the original jury, as a pretext for seeking a second bite of the apple before a new jury that might be more receptive to [their] claims." *Id.* In short, as the *Wedtech* court so succinctly put it, the defendant COs "failure to speak up should not give it

facts, and therefore that recovery must be limited to a single cause of action." 881 F.Supp. at 784.

11. *See Denny, supra,* 42 F.3d at 111 (proper to resubmit verdict form to jury where an inconsis-

tency is alleged when "neither the court's instructions as to the law nor the verdict form would be altered[ ]").

the right to a second trial." *See Wedtech,* 196 B.R. at 279. Therefore, the court finds that the defendant COs waived any right that may have had to object to the verdict as inconsistent by failing to do so before the jury was discharged. Accordingly, their motion for a new trial on this basis is denied.[12]

### III. Qualified Immunity

Defendant Connors belatedly argues that she is entitled to qualified immunity, and thus the court should grant JMOL in her favor. The short answer to this argument is that it is not timely. In a case involving this same plaintiff, *Blissett v. Coughlin,* 66 F.3d 531 (2d Cir.1995) ("*Blissett I* "), the Second Circuit explicitly held that the district court did not err when it ruled that defendants had waived their qualified immunity defense where they did not timely raise it. The defendants in *Blissett I* raised only a general immunity defense in their amended answer; during the five year course of pre-trial litigation, they never addressed the qualified immunity defense; they did not seek to establish such defense at trial, despite the fact that on the first day of trial the court, *sua sponte,* raised the issue of whether such defense had ever been asserted in the case; they did not seek to amend their proposed jury instructions to include such a defense, even after the district court had alerted defendants to the possibility of such a defense; and they did not move either during the trial or after the verdict for JMOL on that basis. *Id.* at 538–539. Not surprisingly, on the basis of *Blissett I,* plaintiff strongly urges this court to hold that defendant Connors waived her right to assert a qualified immunity defense in this case.

### A. Waiver

■ As in *Blissett I,* defendant Connors asserted only a general immunity defense in her answer. Specifically, she, along with some of the other defendants at the time, alleged that they "[w]ere acting in good faith during all times mentioned in the complaint." Answer, at 2, ¶ 5 (Docket #27). That is all; the complaint does not elaborate upon the basis for that defense. Also, as in *Blissett I,* despite the protracted nature of this action, spanning more than thirteen years of pre-trial litigation,[13] defendant Connors never raised the qualified immunity defense in the form of a motion. And even though, eventually, she did give very cursory treatment to this defense in her pre-trial memorandum, she did not seek to establish a qualified immunity defense during the trial. (In fact, she did not even testify.) Nor did her proposed jury instructions include a request to charge on this issue. Finally, even though she moved for JMOL at the close of all of the proof, qualified immunity was not one of the grounds for that motion. In light of the foregoing, as in *Blissett I,* it is simply too late in the day for defendant Connors to be claiming qualified immunity.

■ Furthermore, although overlooked by plaintiff, as just alluded to, there is also a procedural bar to defendant Connors seeking qualified immunity in this post-verdict motion, in that she did not raise this argument when she moved for JMOL at the close of all of the evidence. As mentioned earlier, along with the other defendants, the sole basis for her JMOL motion at the close of the proof was that plaintiff had failed to establish a *prima facie* section 1983 cause of action, and that he had also failed to establish that any of the defendants either assaulted and/or committed a battery upon him. As explained earlier, given the specificity requirement of Rule 50(a)(2), "[a]n issue not raised in a

---

**12.** Without deciding the issue of whether this verdict was, in fact, inconsistent as to the defendants COs, the court observes, as has the Second Circuit, "consistency between verdicts is not always required." *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 56 (2d Cir.1992) (citing, *inter alia, Dunn v. U.S.,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)). In the words of Judge Weinfeld, "[i]nconsistent verdicts upon different counts or claims are not an anomaly in the law, which at times recognizes a jury's right to an idiosyncratic position, provided the chal-

lenged verdict is based upon the evidence and the law." *Malm v. United States Lines Co.,* 269 F.Supp. 731, 731–32 (S.D.N.Y.), *aff'd,* 378 F.2d 941 (2d Cir.1967); *see also Morissette v. United States,* 342 U.S. 246, 276, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952) ("[J]uries are not bound by what seems inescapable logic to judges.").

**13.** The complaint in this action was filed on February 28, 1983.

motion for a directed verdict (now called a motion for judgment as a matter of law) may not be raised on a motion for judgment n.o.v. (now called a 'renewed motion for judgment as a matter of law')." *Rao v. New York City Health and Hospitals Corp.,* 905 F.Supp. 1236, 1245 (S.D.N.Y.1995) (footnote omitted) (citing *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 14 (2d Cir.1993)). Thus, as in *Rao,* because defendant Connors "did not move for judgment as a matter of law at the conclusion of all the evidence on the grounds of qualified immunity, [she] should not be permitted to 'renew' such a motion after entry of judgment unless 'manifest injustice' would result if the motion were not granted." *See id.* at 1246. And, as will be discussed next, also as in *Rao,* "no manifest injustice will result from denying the motion because there is no substantive merit to the motion in any event." *Id.* Consequently, the court will not disregard this blatant procedural deficiency.[14]

### B. "Manifest Injustice"

Even if defendant Connors had not waived her right to assert a qualified immunity defense, she still is not entitled to avail herself of this defense in light of the proof adduced at trial.[15] "[A] defendant is entitled to summary judgment on qualified immunity grounds when, 'looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]' the court determines that a jury could conclude that it was objectively reasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right." *Crawford v. Coughlin,* 94–CV–494H, 1996 WL 227864, at \*4 (W.D.N.Y. April 26, 1996) (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)) (other citation omitted). Defendant Connors cannot satisfy that standard. She takes the position

that because she "was performing a discretionary function within the scope of her duties when she administered the tranquilizer to plaintiff ... based on the fact that plaintiff flooded or threatened to flood his cell, it was objectively reasonable for her to believe that the tranquilizer was necessary and administering such did not violate any constitutional right of plaintiff." Def. Memo. at 4. Defendant Connors is conveniently ignoring the fact, however, that while it might have been objectively reasonable for her to have taken the actions she did under that version of events, due in large part to the fact that neither she nor Dr. Foote testified, that was not the version of facts heard by the jury. As plaintiff correctly points out, there was nothing in the record that defendant Connors "had threatened to flood his cell or otherwise engaged in aggressive behavior." Plaintiff's Memorandum of Law at 9. Furthermore, as plaintiff also accurately notes, even if proof had been adduced that defendant Connors was aware of the foregoing, there was nothing in the record to support the view that a tranquilizer in each buttock was constitutionally permissible. Accordingly, even if defendant Connors had not waived her right to assert a qualified immunity defense, nonetheless, she is not entitled to JMOL on that basis given the proof adduced, or more accurately, not adduced at trial. Therefore, insofar as defendant Connors is seeking JMOL on the basis of qualified immunity, the court denies that motion.

### IV. Punitive Damages Against an Estate

Lita Casey, as executrix of the estate of Daniel Casey, contends that plaintiff is precluded from recovering punitive damages against her in light of New York's sur-

---

14. As the Eleventh Circuit in *Redd v. City of Phenix City, Ala.,* 934 F.2d 1211 (11th Cir.1991), so aptly put it, when a party does not comply with this "particularly clear and mechanical rule of law[,] ... the district judge may not wave his magic wand dismissing a procedural requirement as a technicality." *Id.* at 1214.

15. As an aside, plaintiff should be aware that if this case were now on appeal to the Second Circuit, there is a strong probability that he

would be deemed to have waived the issue of whether defendant Connors waived the right to assert a qualified immunity defense, because such defense was not the basis for her JMOL motion. *See Gibeau v. Nellis,* 18 F.3d 107, 109 (2d Cir.1994) (despite the fact that the plaintiff had waived his right to move for JNOV, because he *did not move for a directed verdict at the* close of the trial, the Court, nonetheless, considered the merits of his appeal from the denial of that motion because the defendants failed to raise the waiver issue in the district court).

vival statute, section 11–3.2 of the EPTL. As already noted, that statute allows a party to continue with a cause of action where the opposing party dies during the course of the litigation, but, under those circumstances, according to subdivision (a)(1), "[p]unitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury." N.Y. EST., POWERS, & TRUSTS § 11–3.2(a)(1). The estate of Daniel Casey maintains that punitive damages may not be assessed against it given the plain language of this statute. Plaintiff Blissett argues, not very convincingly, that that statute is inapposite because this was not a personal injury case, but a case seeking redress for a constitutional violation.

The court does not agree with the distinction plaintiff Blissett is attempting to draw here. In the first place, the crux of the constitutional claim against then CO Casey was that he violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by employing excessive force upon plaintiff. True, plaintiff did not have to show serious injury to sustain that particular Eighth Amendment claim;[16] but, nevertheless, stripped to its core, in essence, that claim is one for personal injury. *Cf. O'Neill v. Krzeminski,* 839 F.2d 9, 11 n. 1 (2d Cir.1988) (characterizing an excessive force claim as a "constitutional tort"). The court is particularly reluctant to do draw the distinction, urged by plaintiff Blissett, between a personal injury action and an alleged constitutional deprivation based upon excessive force, given that in New York, "[t]here is a strong policy **against** the assessment of punitive damages against an estate on account of wrongful conduct of the decedent[.]" *Flaum v. Birnbaum,* 177 A.D.2d 170, 176, 582 N.Y.S.2d 853, 857 (4th Dep't 1992) (emphasis added) (citing EPTL § 11–3.2(a)(1) and *Gordon v. Nathan,* 43 A.D.2d 917, 352 N.Y.S.2d 464 (1st Dep't 1974)).

■ There is an additional reason why the court does not believe that plaintiff is entitled to recover punitive damages against the estate of Casey. In determining whether a section 1983 action, such as this, survives the death of a defendant, the court must look to the state law where the cause of action arose, and in New York that is section 11–3.2(a)(1) of the EPTL. *Barrett v. United States,* 651 F.Supp. 604, 605 (S.D.N.Y.1986) (citations omitted). In the court's opinion, it would be an anomalous situation indeed if plaintiff were allowed to proceed with this section 1983 action against the estate of Casey because of section 11–3.2(a)(1), while at the same time he was allowed to recover relief, in the form of punitive damages, which clearly is beyond the scope of relief which that statute authorizes. In light of the foregoing, the court finds that the estate of Casey is entitled to JMOL because to allow the punitive damage award to stand as against that estate would result in "manifest injustice."

## V. Excessiveness of Punitive Damage Award

Given the court's determination that punitive damages were improperly awarded against the Casey estate, there is no need for the court to consider the estate's alternative argument that such award was excessive. The court must consider that argument, however, in connection with defendants Connors and Mulhall.

■ In *Miltland Raleigh–Durham v. Myers,* 840 F.Supp. 235 (S.D.N.Y.1993), the court reiterated the well-established principles pertaining to the award of punitive damages:

> When awarding punitive damages, the award should not be in an amount that would result in the financial ruin of the defendant.... Nor should it constitute a disproportionately large percentage of a defendant's net worth.... [E]ven outrageous conduct will not support an oppressive or patently excessive award of damages.... The burden is on the defendants to show that his [or her] financial circumstances [are such that would] warrant limitation of the award.

*Id.* at 240–41 (internal quotations and citations omitted). A court, when reviewing damage awards, must construe all evidence

**16.** *See Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

and factual inferences in favor of the non-movant; and it must also give "considerable deference to the jury's determinations." *Luciano v. Olsten Corp.*, 912 F.Supp. 663, 668 (E.D.N.Y.1996) (citing *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680 (2d Cir.1993)). However, "[i]f a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Id.* (citation omitted).

■ Reviewing the punitive damage award against defendant Mulhall in light of those standards, the court finds that his financial circumstances warrant limitation of the $22,031.00 punitive damage award against him. Defendant Mulhall's testimony establishes that he has assets of approximately $64,000.00 (excluding his annual salary of almost $44,000.00), but that he also has liabilities of slightly over $58,000.00, which includes a mortgage of $45,000.00. In light of the foregoing, the court finds that the jury's punitive damage award against defendant Mulhall is oppressive, and consequently, it reduces that award to $5,000.00. In the court's opinion, consistent with the purpose of such an award, that reduced award will "punish the defendant and ... deter him and others from similar conduct in the future[,]" while at the same time ensuring that this award does not place defendant Mulhall in financial ruin. *See Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir.1992) (citation omitted).

■ Defendant Connors is also entitled to have the $31,650.00 punitive damage award against her reduced.[17] As shown by the proof at trial, although defendant Connors has an annual salary of approximately $47,000.00, she is the sole wage earner in her household. Tr., Vol. II at 382 and 385. Furthermore, she has liabilities totaling almost $85,000.00, but she only has assets (excluding her salary) in the amount of $6,722.00.[18] Under these circumstances, the $31,650.00 punitive damage against defendant Connors "shock[s] the judicial conscience." *See Tingley Systems, Inc. v. Norse Systems, Inc.*, 49 F.3d 93, 96 (2d Cir.1995) (citation omitted). Therefore, taking into account defendant Connors' overall financial situation, the court reduces the punitive damage award against her to $7,500.00.

In accordance with Second Circuit practice, because the court finds that the punitive damage awards against defendants Connors and Mulhall were excessive, under the practice of remittitur, it is reducing those awards, as just described. As the Second Circuit has instructed, however, in the event plaintiff Blissett decides not to accept this award as reduced,[19] the court will order a new trial. Clearly the punitive damages issue is inextricably intertwined with the issues of liability in this case, and therefore such a trial would encompass both the issue of liability and the issue of damages (compensatory and punitive). Plaintiff Blissett has twenty (20) days from the date hereof in which to advise the court, and opposing counsel, in writing, whether he intends to accept this award as

---

**17.** As the parties are well aware, the jury found defendant Connors liable on two separate theories—for violating plaintiff's constitutional rights under the Eighth Amendment and for state law battery. It goes without saying that because the first theory of liability is grounded in federal law, the federal standards for determining the excessiveness of the punitive damage award against her govern. And because the jury did not apportion the amount of punitive damages to be awarded against Ms. Connors between the federal and pendent state law causes of action, the court will apply federal law in determining whether the punitive damage award against her on both theories was excessive. *Cf. Shea v. Icelandair*, 925 F.Supp. 1014, 1020–22 (S.D.N.Y. 1996) (because plaintiff was not entitled to recover damages for pain and suffering under the federal Age Discrimination in Employment Act,

New York law governed whether those damages which were, necessarily, attributable to a violation of New York's Human Rights Law were excessive).

**18.** This figure is derived from Ms. Connors' testimony that she has $5,625.00 in equity in her house, $482.00 in two separate saving accounts, as well as an insurance policy with a cash value of $615.00. Tr., Vol. II at 382 and 385.

**19.** The total award, then, taking into account these reductions is $5,600.00 in compensatory damages; $4,878.00 in punitive damages against defendant Ralph Greene; $5,000.00 in punitive damages against Timothy Mulhall; and $7,500.00 in punitive damages against Anne Connors, for a total award of $22,978.00.

reduced, or whether he wants to proceed with a new trial.

IT IS SO ORDERED.