Patrick **GRAHAM**, Plaintiff,

v.

Robert J. **HENDERSON**, Hans Walker, Vincent Mahunik, Michael A. Vasquez, Mary Beth Ciaschi Pethybridge, Gary Anthony, William A. Gabak, Defendants.

No. 9:90–CV–692HGMGJD.

United States District Court, N.D. New York.

July 19, 2004.

Young, Sommer, Ward, Ritzenberg, Wooley, Baker & Moore, LLC, David C. Brennan, of counsel, Albany, NY, for Plaintiff.

Honorable Elliot Spitzer, New York State Attorney General, Senta B. Siuda, Assistant

Attorney General, of counsel, Syracuse, NY, for Defendants.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

Plaintiff, Patrick Graham, an inmate in the New York State Corrections System, alleges a violation of his civil rights under 42 U.S.C. § 1983 against defendants, including Charles Ciaschi and John Nelson Decker. Plaintiff moves pursuant to Rule 25(a) of the Federal Rules of Civil Procedure: (1) for an Order substituting Mary Beth Ciaschi Pethybridge, distributee and Voluntary Administrator of the Estate of Charles Ciaschi, for defendant Charles Ciaschi; (2) an Order substituting Jeanne Decker, wife of deceased defendant John Nelson Decker, for John Nelson Decker; and, (3) an Order amending the caption to reflect these changes.

## BACKGROUND

### I. Impetus for the Case

On or about June 1989, staff at the Auburn State Prison (the "Prison"), where plaintiff was incarcerated, decided to remove the showers from the industrial area where inmates, including plaintiff, produced various furniture. The proposed removal of the showers was a point of contention between the Prison's staff and its inmates. Inmates sought to persuade officials at the Prison to reconsider their decision to remove the showers and engaged in a series of meetings with them in June 1989 to this effect. The inmates continued to pursue their position by initiating a claim through the institutional grievances process as established by prison protocols. Plaintiff submits that his participation in these activities, as the Shop Representative for his work area, was noteworthy. When the inmates' efforts failed to elicit the desired result, approximately seventeen of them, following plaintiff's lead, filed grievances against the shower removal. Contemporaneously, plaintiff petitioned the New York State Supreme Court pursuant to Article 78 of the Civil Practice Law and Rules for certain relief, including an injunction to prevent officials at the Prison from removing the showers. Thereafter, the Inmate Grievance Resolution Committee ("IGRC") met with plaintiff at his work area to investigate his grievance. The IGRC asked plaintiff to aid in its investigation by recording, from among the group of inmates having filed grievances, the names of those who wished to represent the group, for given the similarity of the grievances, they were to be consolidated. Plaintiff complied with the IGRC's requests and spoke with several inmates to this effect. Plaintiff directed those inmates who wished to participate as representatives to write their name, DIN number, and prison cell location on a pad of paper.

According to plaintiff, defendant Gabak observed plaintiff collecting information and accused him of circulating a petition. Defendants Gabak and Vasquez, allegedly directed defendants Ciaschi and Decker to file misbehavior reports against Graham for the alleged circulation of a petition as a pretext for urging a work slow-down. Plaintiff alleges that defendants were creating a subterfuge to retaliate against him for spearheading the movement to oppose the removal of the showers. As a result of the misbehavior reports, the Prison's staff conducted a Tier III disciplinary hearing where defendant Mahunik sentenced plaintiff to 180 days in the Special Housing Unit ("SHU"). Plaintiff characterized Mahunik's conduct as particularly egregious in view of Corrections Law § 138(4) which states: "Inmates shall not be disciplined for making written or oral statements, demands, or requests involving a change of institutional conditions, policies, rules, regulations, or laws affecting an institution." Plaintiff asserts a claim under 42 U.S.C. § 1983 against defendants, as employees of the New York State prison system acting under color of state law, for the alleged retaliation against him—180 days in the SHU—for exercising his First Amendment rights.

Plaintiff pursued his § 1983 action *pro se* for more than a decade, including the appeal of its dismissal to the United States Court of Appeals for the Second Circuit. In July 2002, however, the court appointed trial counsel for plaintiff.

## II. Motion to Substitute

Plaintiff received defendants' pre-trial papers on September 18, 2002, which informed him that defendants Ciaschi and Decker were deceased. *See* Dkt. No. 146, Brennan Aff. at ¶ 4. According to the New York State Attorney General's Office [1] ("the State"), Ciaschi died on April 30, 1995, and Decker died on April 15, 1997. *See* Dkt. No. 146, Brennan Aff. at ¶ 4. Counsel for defendants failed to notify plaintiff of the deaths of these defendants. *See id.* at ¶ 6. Plaintiff's counsel contacted the Attorney General's Office and requested information on the personal representatives of the decedents, but the Attorney General's Office indicated that the State was not in possession of that information. *See id.* at ¶ 7. On November 4, 2002, the Attorney General's Office filed a "Suggestion of Death" on the record as required for each decedent by Rule 25(a) of the Federal Rules of Civil Procedure. *See id.* at ¶ 8. Plaintiff's counsel avers upon information and belief that Decker died intestate and that no action was taken in the Cayuga County Surrogate's Court. He is survived by his wife Jeanne Decker, whom plaintiff alleges is a distributee of his estate. *See* Dkt. No. 146, Brennan Aff. at ¶ 10. Counsel similarly avers upon information and belief that Ciaschi is survived by his wife Mary Beth Ciaschi who was a distributee of his estate and served as a Voluntary Administrator of the estate. *See id.* at ¶ 11. Mary Beth Ciaschi has since remarried and is now known as Beth Pethybridge. *See* Dkt. No. 145, Pl.'s Mem. of Law in Supp. of Mot. at 1. The New York State Attorney General has filed an appearance on behalf of Jeanne Decker and Beth Pethybridge who, in addition to the remaining defendants, oppose plaintiff's motion.

## DISCUSSION

### I. Survivability of Plaintiff's Claim Under 42 U.S.C. § 1983

#### A. In General

■ Plaintiff's claim arises under 42 U.S.C. § 1983. In determining whether a

claim brought under 42 U.S.C. § 1983 survives the death of a defendant, the court must consider the law of the state in which the action arose. *See Blissett v. Eisensmidt,* 940 F.Supp. 449, 457 (N.D.N.Y.1996) (McCurn, S.J.) (citing *Barrett v. United States,* 651 F.Supp. 604, 605 (S.D.N.Y.1986)). Here, the relevant statute is New York Estates, Powers and Trusts Law ("EPTL") § 11–3.2(a)(1), which states, in pertinent part, that "[n]o cause of action for injury to person or property is lost because of the death of the person liable for the injury. For any injury, an action may be brought or continued against the personal representative of the decedent . . . "

■ The State argues that only "personal injury" claims will survive the death of a defendant. *See* Dkt. No. 149, Def.'s Mem. of Law in Supp. of Mot. at 9–10. The State argues that when New York EPTL § 11–3.2(a)(1) makes mention of "injury to person," the definition of "personal injury" offered in New York Gen. Constr. Law, § 37–a is applicable. The definition reads as follows: "Personal injury" includes libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another. New York Gen. Constr. Law, § 37–a. The State argues that this definition is all-inclusive and because there is no mention of 42 U.S.C. § 1983 retaliation claims, such claims do not survive the death of a defendant. The court disagrees.

In *Blissett,* the court assumed, without explanation, that the plaintiff's § 1983 claim for excessive force in violation of the Eighth Amendment survived the death of a named defendant (a correctional officer at a correctional facility). *See Blissett,* 940 F.Supp. at 457. Because the § 1983 claim at issue was not based on retaliation, the court made no mention of personal injury being required for survival of the § 1983 claim, nor did it note that retaliation claims cannot survive the death of a named defendant. *See id.* In *Barrett,* the court held that § 1983 claims

---

1. The State Attorney General's Office has represented all defendants to this action from commencement.

can survive the death of both the defendant and the plaintiff. *See Barrett*, 651 F.Supp. at 605–606. In *Pratt v. Bernstein*, 533 F.Supp. 110, 117 (S.D.N.Y.1981), the court held that § 1983 claims for personal injury will survive the death of the person liable. The court did not hold that *only* § 1983 claims for personal injury will survive the death of the person liable, nor did they hold that § 1983 claims for retaliation do not survive the death of the defendant. *See Pratt*, 533 F.Supp. at 117.

Although there is no case law available specifically holding that § 1983 retaliation claims survive the death of the person liable, there is no case law to the contrary. Furthermore, other types of § 1983 claims have survived the death of the defendant. For instance, in *Swiggett v. Coombe*, 2003 WL 174311, at * 1–3 (S.D.N.Y. Jan. 27, 2003), the court impliedly held that a state prison inmate could have substituted parties where the defendant prison officials had passed away prior to the conclusion of a § 1983 due process claim had the plaintiff timely filed the motion to substitute and named the proper parties for substitution. Courts have also held that other § 1983 claims survive the death of the plaintiff. *See Javits v. Stevens*, 382 F.Supp. 131 (S.D.N.Y.1974) (holding that a civil rights action survived the plaintiff attorney's death where he was seeking injunctive and declaratory relief vacating an order which suspended the attorney from practicing law for three years).

Because no court has held that § 1983 retaliation claims do not survive the death of the defendant in New York and further, because no court has held that only § 1983 "personal injury" claims survive the death of the defendant, plaintiff's § 1983 retaliation claim survives the death of defendants Decker and Ciaschi. *See Barrett*, 651 F.Supp. at 606.

*B. Plaintiff's Claim for Punitive Damages*

■ While plaintiff's 42 U.S.C. § 1983 retaliation claim survives the death of defendants Decker and Ciaschi, his claim for punitive damages does not survive their deaths. New York law is very clear on this matter. New York EPTL § 11–3.2(a)(1) allows a par-

ty to continue with a cause of action where the opposing party dies during the course of litigation, but "punitive damages shall not be awarded nor penalties adjudged in any such action brought . . ." Also, "[t]here is a strong policy **against** the assessment of punitive damages against an estate on account of wrongful conduct of the decedent[.]" *Blissett*, 940 F.Supp. at 457 (citations omitted). The court in *Blissett* further noted that punitive damages are "clearly beyond the scope of relief which [New York EPTL § 11–3.2(a)(1)] authorizes." *Id.*

Plaintiff's request for punitive damages based on his § 1983 retaliation claim as against defendants Ciaschi and Decker does not survive their deaths and therefore must be dismissed as to those defendants.

## II. Substitution of Parties

### A. Proper Parties

■ The Federal Rules, rather than state-law principles, govern the procedure for substitution following a party's death, even where the court must apply state substantive law. *Servidone Constr. Corp. v. Levine*, 156 F.3d 414, 416 (2d Cir.1998) (citations omitted). Pursuant to Rule 25 of the Federal Rules of Civil Procedure, substitution of parties in a civil action may be allowed upon the death of a named party:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the *successors* or *representatives* of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party (emphasis added).

Rule 25 only permits the substitution of "proper parties." *See Unicorn Tales, Inc. v.*

*Banerjee,* 138 F.3d 467, 469 (2d Cir.1998). It is well settled that when a defendant in a § 1983 action dies ... the proper party to substitute is the successor of the deceased or the representative of his estate. *Swiggett,* 2003 WL 174311, at *2 (citations omitted).

### 1. "Representatives"

■ A "representative" of the deceased party's estate is a proper party for substitution. *Sinito v. United States Dept. of Justice,* 176 F.3d 512, 516 (D.C.Cir.1999). The law of the forum state determines the capacity of the parties to sue and be sued, and under the applicable New York law, a representative is a person who has received letters to administer the estate of a decedent. *Collins v. American Automobile Insurance Co.,* 230 F.2d 416, 422 (2d Cir.1956); New York EPTL § 1–2.13. In such cases, the representative is usually either the appointed administrator or executor of the decedent's estate. *See Collins,* 230 F.2d at 422; *accord Al-Jundi v. Rockefeller,* 88 F.R.D. 244, 246 (W.D.N.Y.1980).

#### a. Mary Beth Ciaschi Pethybridge

■ Mary Beth Ciaschi Pethybridge was the Voluntary Administratrix of defendant Charles Ciaschi's estate. *See* Dkt. No. 146, Ex. D. Under New York EPTL § 1301, a voluntary administratrix is "a person who qualifies and undertakes to settle the estate of the decedent without the formality of court administration ...." Acting as Voluntary Administratrix of her deceased husband's estate, by itself, does not meet the requirements of a "representative" for the purposes of substitution in New York. Plaintiff has offered no proof that Ms. Ciaschi Pethybridge received any letters to administer the estate of Charles Ciaschi. *See* New York EPTL § 1–2.13. Plaintiff has only produced an "Affidavit in Relation to Settlement of Estate Pursuant to Article 13, SCPA" signed by Mary Beth Ciaschi in December of 1995. This document fails to show that testamentary letters of administration were ever granted to Mary Beth Ciaschi regarding the Estate of Charles Ciaschi, and therefore, under New York law, plaintiff has failed to establish that Mary Beth Ciaschi was a "representative" of her deceased husband's estate.

#### b. Jeanne Decker

■ With regard to Jeanne Decker, plaintiff has merely produced a computer printout of the obituary of defendant John Nelson Decker. Dkt. No. 146, Ex. C. While the obituary states that Jeanne Decker was defendant John Nelson Decker's wife of fifty-one years, it establishes nothing more than that. *See id.* Therefore, plaintiff has failed to establish that Jeanne Decker was a representative of the estate of her late husband John Nelson Decker or that he had an estate.

### 2. "Successors"

■ Under Rule 25(a), a "successor" of the deceased party is also a proper party for substitution. A successor of the deceased party is a "distributee" of the decedent's estate if the decedent's estate has been distributed at the time the motion for substitution has been made. *Gronowicz v. Leonard,* 109 F.R.D. 624, 626 (S.D.N.Y.1986) (citations omitted); *see e.g., Hardy v. Kaszycki & Sons Contractors, Inc.,* 842 F.Supp. 713, 716–717 (S.D.N.Y.1993) (holding that the deceased defendant trustee's wife was a representative of her husband's estate and a proper party for substitution purposes where the wife was the primary distributee of her deceased husband's estate).

#### a. Mary Beth Ciaschi Pethybridge

■ As previously noted, plaintiff submitted the Affidavit in Relation to Settlement of Estate Pursuant to Article 13, SCPA to show that Mary Beth Ciaschi Pethybridge is a proper party for substitution of deceased defendant Charles Ciaschi. *See* Dkt. No. 146, Ex. D. While this document fails to show that testamentary letters of administration were ever granted to Mary Beth Ciaschi regarding the Estate of Charles Ciaschi, it reveals that Mary Beth Ciaschi was the primary distributee of the Estate of Charles Ciaschi. *See* Dkt. No. 146, Ex. D. The affidavit further reveals that the proceeds of the estate were distributed. *See id.* Because the estate appears to have settled sometime in 1995, and the motion to substitute parties was not filed until 2002, Mary Beth Ciaschi Pethybridge is a

"successor" of deceased defendant Charles Ciaschi, and she is therefore a proper party for substitution.

Because the Estate of Charles Ciaschi has apparently been settled and the proceeds fully distributed, a discretionary denial of substitution in this case would not further the principal reason for such a denial. *See Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir.1980) (stating that the principal reason for discretionary denial of substitution of parties is to promote the prompt settlement and distribution of the estate of deceased defendants). Furthermore, the State has failed to establish that Mary Beth Ciaschi Pethybridge is not an individual who can "adequately represent the interests of the deceased party." *See Sinito*, 176 F.3d at 516 (stating that "[i]t is axiomatic that Rule 25 limits properly substituted parties to those individuals who can adequately represent the interests of the deceased party.").

### b. Jeanne Decker

As noted above, with respect to Jeanne Decker, plaintiff's lone submission was a computer print-out of defendant John Nelson Decker's obituary. Dkt. No. 146, Ex. C. The obituary fails to prove that Jeanne Decker was a distributee of John Nelson Decker's estate, if one did exist. *See id.* Plaintiff, therefore, has failed to establish that Jeanne Decker was a "successor" of John Nelson Decker and because plaintiff also failed to establish that Jeanne Decker was a "representative" of John Nelson Decker's estate, plaintiff has not shown that Jeanne Decker is a "proper party." Therefore, plaintiff's request for substitution of Jeanne Decker for John Nelson Decker is denied. Furthermore, deceased defendant John Nelson Decker is dismissed from the case.

### B. Timeliness of Motion to Substitute

Plaintiff's motion for substitution was made, and the proper party (Mary Beth Ciaschi Pethybridge) served, within the ninety day time period required by Fed.R.Civ.P. 25(a). On November 4, 2002, the Attorney General filed a "Suggestion of Death" on the record as required by Fed.R.Civ.P. 25(a) for each decedent. *See* Dkt. No. 146, Ex. C.

Plaintiff filed his motion for substitution on January 27, 2003. *See* Dkt. No. 144, Notice of Mot.

### III. Substitution is Not Prejudicial To Any Party

 The decision by the court to grant substitution is discretionary. *See Saylor v. Bastedo*, 623 F.2d 230, 236–237 (2d Cir.1980) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485–486, 67 S.Ct. 428, 91 L.Ed. 436 (1947)). The discretionary nature of a motion to substitute parties is established by the use of the word "may" in Fed.R.Civ.P. 25(a)(1). *See Saylor*, 623 F.2d at 236. In *Saylor*, the Second Circuit stated that in the exercise of sound discretion, a court may deny a motion to substitute a proper party for a deceased defendant if the suggestion of death is not made or is delayed and circumstances have arisen rendering it unfair to allow substitution. *See id.* at 237. "The principal reason for such a discretionary denial is to promote the prompt settlement and distribution of the estate of deceased defendants." *Id.*

### A. Proof of an Estate for Charles Ciaschi and the Effects of Its Settlement

The State erroneously contends that there is no proof that an estate ever existed for Charles Ciaschi. *See* Dkt. No. 149, Def.'s Mem. of Law in Supp. of Mot. at 18–19. As set forth above, the Affidavit in Relation to Settlement of Estate Pursuant to Article 13, SCPA shows: that there was in fact an estate for Charles Ciaschi; that Mary Beth Ciaschi was Voluntary Administrator of said estate; and, that she was also the primary distributee of the estate. *See* Dkt. No. 146, Ex. D. Furthermore, the affidavit reveals that the estate appears to have settled and its proceeds were distributed sometime in 1995, shortly following the death of Mr. Ciaschi. *See id.*

The State cited two cases in which courts held that due to the fact that the estates of deceased defendants had been long settled, substitution was denied. *See* Dkt. No. 149, Def.'s Mem. of Law in Supp. of Mot. at 16–19. In *Saylor v. Bastedo*, the Second Circuit affirmed based only in part on the fact that the estate of the deceased defendant had

been settled. *See Saylor*, 623 F.2d at 236–237. The Second Circuit also affirmed because the deceased party had not been deposed prior to his death, and his sons were unable to produce documents evidencing his alleged misconduct. *Id.* at 235. Here, Mr. Ciaschi and Mr. Decker were questioned by plaintiff through Mr. Mahunik at the Tier III Disciplinary Procedure on July 12 and 13, 1989. *See* Dkt. No. 141, Sec. 8. Both defendants also answered interrogatories. *See* Dkt. No. 25 and 31. There is also other evidence related to defendant Ciaschi in the record. Moreover, the three other defendants connected with the claim are still alive and can and have produced evidence relating to the alleged misconduct by Mr. Ciaschi. The other case cited by the State denied substitution of the wife and executrix of the estate of the deceased party where the estate had long been settled. *See TWI Int'l. Inc. v. Vanguard Oil and Serv. Co.*, 1994 WL 191884, at *2 (S.D.N.Y. May 17, 1994). The fact that the estate had been long-settled was not the only consideration at hand. *See TWI Int'l, Inc.*, 1994 WL 191884, at *2. In *TWI*, the party seeking substitution had already been granted a judgment against the deceased defendant. *See id.* More importantly though, the stipulation sought to be enforced by the plaintiff had no effect because it had been signed months after the death of the decedent. *See TWI Int'l, Inc.*, 1994 WL 191884, at *2.

Because these two cases are distinguishable on several grounds and because the court has discretion to grant or deny substitution, the mere fact that the estate has long been settled does not persuade the court to deny substitution.

### B. Ms. Ciaschi's Involvement in the Litigation Thus Far

The State argues that Ms. Ciaschi has not been involved in the litigation thus far and therefore should not be substituted. *See* Dkt. No. 149, Def.'s Mem. of Law in Supp. of Mot. at 14–19. The State supports their argument with the ruling in *Crotty v. City of Chicago Heights*, 1990 WL 6816, at * 1–2 (N.D.Ill. Jan. 10, 1990). There, the court held that substitution of the executor of the decedent party's estate was inappropriate because the executor had not been involved in the litigation to that point. *See id.* Again, that was not the only reason behind the court's denial of substitution. *See id.* Here, Ms. Ciaschi was married to Charles Ciaschi until his death in 1995. She has also been involved in the litigation since being named as a candidate for substitution for Charles Ciaschi in 2003. Therefore, the court is not persuaded by this argument to deny substitution.

The State also argues that substitution should be denied because the candidate(s) submitted for substitution must be able to adequately represent the interests of deceased parties. *See Crotty*, 1990 WL 6816, at *2. This court does not foresee any problems regarding adequate representation of the interests of the deceased defendant. Therefore, without more, the court is not persuaded to deny substitution on these grounds.

### C. Imminency of Trial

The State erroneously states that trial is imminent. At this point in time, there is no trial date on the calendar and therefore trial is not imminent.

### D. Possibility of Separate Suit is not Required

The State next argues that the motion to substitute should be denied unless plaintiff has the ability to bring a separate suit against Ms. Ciaschi regarding his allegations. This is a misinterpretation of the law. The State cites *McManus v. Lykes Brothers Steamship Co., Inc.*, 275 F.Supp. 361, 364 (E.D.La.1967) in support of this argument. In that case, the plaintiff died, and furthermore, no motion to dismiss was ever filed. *See id.* at 362. When the court was referring to requiring the substituted party to be able to bring a separate suit against the adversarial parties, the court was speaking of substitution for a deceased plaintiff. *See id.* at 364. Although the *McManus* court generalized this issue, the context of that case leads to the conclusion that the court was not referring to situations such as the one before this court (where a plaintiff seeks to substitute someone for a deceased defendant). *See*

*id.* More importantly, the court in *Mc-Manus* was applying Louisiana law. *See id.* Mr. Graham does not need to be able to bring a separate suit against Ms. Ciaschi in order for this court to grant his motion for substitution of Ms. Ciaschi Pethybridge for her late husband, defendant Charles Ciaschi.

## CONCLUSION

The court has the discretion to deny substitution of proper parties if it sees fit to do so. *See Saylor*, 623 F.2d at 236–237. For the reasons stated above, however, this court is not persuaded by any of the State's arguments to deny the plaintiff's motion to substitute Mary Beth Ciaschi Pethybridge for deceased defendant Charles Ciaschi. It appears to the court that it would be unfair and unjust to deny plaintiff's motion to substitute on the grounds suggested by the State. This is so because it was due to the lack of diligence on the part of the defendants that Mr. Graham, proceeding *pro se* at the time, did not learn of the deaths of Mr. Ciaschi and Decker for seven and five years (respectively) after their deaths.

**WHEREFORE**, after careful consideration of the file in this matter and the parties' submissions, as well as the applicable law, the court hereby

**ORDERS**, that Patrick Graham's motion to substitute Mary Beth Ciaschi Pethybridge for deceased defendant Charles Ciaschi, pursuant to Federal Rule of Civil Procedure 25, is GRANTED; the court further

**ORDERS**, that Patrick Graham's motion to substitute Jeanne Decker for deceased defendant John Nelson Decker, pursuant to Federal Rule of Civil Procedure 25, is DENIED; the court further

**ORDERS**, that John Nelson Decker be dismissed from the case; the court further

**ORDERS**, that the Clerk of the Court amend the case caption, as reflected in the caption above: Mary Beth Ciaschi Pethybridge shall be substituted for Charles Ciaschi and John Nelson Decker shall be deleted.

**IT IS SO ORDERED.**