Frank SINITO, Next-of-Kin of Thomas J. Sinito, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellees.

No. 98–5227.

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1999.

Decided May 18, 1999.

James H. Lesar argued the cause and filed the briefs for appellant.

Dara A. Corrigan, Assistant United States Attorney, argued the cause for appellees. With her on the brief were Wilma

A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney.

Before: WALD, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This case presents the question whether a claim brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, can ever survive the death of the original requestor. We hold that it may, but remand the case to the district court to determine whether the deceased requestor's son is the proper party for substitution within the meaning of Fed.R.Civ.P. 25(a).

## I.

Thomas Sinito filed this FOIA action in 1987, seeking disclosure of documents generated as part of an organized crime investigation that resulted in his conviction and imprisonment. Sinito died while still in prison in December 1997, before this protracted litigation was completed. On January 7, 1998, appellees moved in the district court to dismiss the case as moot based upon the death of the plaintiff. On January 29, 1998, Sinito's counsel opposed the motion and moved to substitute Sinito's son Frank as the plaintiff. The district court granted appellees' motion to dismiss and denied the motion to substitute, ruling that the FOIA statute is not remedial and thus, that Sinito's cause of action cannot survive his death. *See Sinito v. United States*, Civ. No. 87–814 (D.D.C. March 31, 1998). Sinito's son appealed the dismissal. While we disagree with the district court's conclusion that a FOIA cause of action can never survive the death of the original requestor, we remand for a consideration of whether Sinito's son qualifies under Rule 25(a) as a legal representative eligible to continue the action.

■ We held in *Mallick v. International Bhd. of Electrical Workers*, 814 F.2d 674 (D.C.Cir.1987), that whether a cause of action based on a federal statute survives the death of the plaintiff is a question of federal law. In answering this question, a court's role is to "formulate a federal rule of decision that best serves the goals which underlie the federal right of action itself," and thereby "effectuate the will of Congress as best [we] can." *Id.* at 677. That Congress failed to include a specific clause in the statute providing that the action should survive the death of the original party does not necessarily mean that Congress intended the action to abate upon the party's death. *Id.* (citing *Cox v. Roth*, 348 U.S. 207, 209, 75 S.Ct. 242, 99 L.Ed. 260 (1955)).

■ *Mallick* involved a union member's lawsuit brought under the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 431(c), seeking disclosure of a union's financial records. We held that the action survived the original plaintiff's death and that a fellow union member could be substituted as plaintiff in his place. We find the instant case seeking disclosure of records under the FOIA analogous. First, in examining the purpose of the LMRDA, *Mallick* said that "deterrence of wrongful conduct is a major goal underlying the authorization for union member lawsuits" because Congress mandated disclosure of a union's financial records in order to prevent union leaders from mismanaging union funds and union affairs. *Mallick*, 814 F.2d at 677 (citing H.R.Rep. No. 86–741, at 8 (1959)). This deterrence principle would not be well-served if the action abated upon the death of the particular union member who brought the suit for disclosure. *Id.* ("union officials contemplating abusive conduct must know that they are readily accountable through [LMRDA] lawsuits to verify the union's reports").

Similarly, "the basic purpose of the Freedom of Information Act [is] 'to open

agency action to the light of public scrutiny.'" *U.S. Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)) (internal quotation omitted); *see also NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) ("The basic purpose of the FOIA is to insure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."); 120 Cong. Rec. 17,038 (1974) (statement of Sen. Weicker) ("None of the abuses [by government officials] that we have seen come out of this system would have happened if more people, more eyes, more ears, had been on the scene."); H.R.Rep. No. 89–1497, *reprinted in* 1966 U.S.C.C.A.N. 2418, 2419 (hereinafter "House Report") (the FOIA was enacted because "the weed of improper secrecy had been permitted to blossom and was choking out the basic right to know").

The government argues that the FOIA statute, unlike the LMRDA, does not serve a deterrent purpose because under the LMRDA, "all of the other union members would be seeking *the same information to remedy the same harm as the deceased plaintiff.*" Government's Brief at 6 (emphasis added). In other words, the LMRDA redresses a "particular" harm—"a problem or aberration in the union's financial records," *id.* at 6–7—whereas the FOIA "provides a window for any individual to open into the functions and workings of the government and an effective mechanism to ensure the disclosure of documents." *Id.* at 7. From this, the government concludes that the FOIA cannot correctly be viewed as a "remedial" statute intended to deter official misconduct, but should instead be considered as an access right accorded to all citizens in the interest of open government.

It is true that the FOIA allows "any person" to obtain nonexempt records from a government agency without demonstrating any particularized interest in the material or injury stemming from its nondisclosure. *See* 5 U.S.C. § 552(a)(3)(A). But this by no means obscures the fact that one of its paramount goals, like that of the LMRDA, is to deter secrecy in government and the corruption it can breed. *See, e.g.,* House Report at 2426 (the FOIA strengthened previous public information statute by providing "a specific remedy for any improper withholding of agency records by granting the U.S. district courts jurisdiction to order the production of agency records improperly withheld"); Anthony T. Kronman, *The Privacy Exemption to the Freedom of Information Act,* 9 J. Legal Studies 727, 733 (1980) (the FOIA's goal is "promot[ing] honesty and reduc[ing] waste in government by exposing official conduct to public scrutiny").

It is largely irrelevant that the LMRDA is aimed *specifically* at remedying corrupt unions, while the FOIA more broadly targets a variety of evils stemming from secrecy in all facets of government activity. Both statutes provide constituents with a right of access to documents that show how a government or union conducts its business, and both grant a constituent who has been denied such access in violation of the applicable law the right to seek a judgment in federal court ordering release of the documents sought. Neither statute provides a damages remedy, but each enables a prevailing plaintiff to collect attorneys' fees under certain conditions. *See* 5 U.S.C. § 552(a)(4)(E) (FOIA); 29 U.S.C. § 431(c) (LMRDA). The fact that the FOIA creates a right of access available to all citizens equally, as opposed to the LMRDA's provision of a right of access to union information for a defined class, does not militate in favor of different results based on different purposes of the two acts.

We note that in this respect a FOIA case is not unlike a *Bivens*[1] cause of action, which also survives the death of the plaintiff because of its deterrent purpose and effect. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In a *Bivens* suit, a plaintiff seeks redress for the violation of a right (in *Carlson,* the Eighth Amendment proscription against cruel and unusual punishment) that is also guaranteed to all citizens equally. And just as a plaintiff in a *Bivens* action claims that this universally held right was violated by a *particular* course of conduct, so does a plaintiff in a FOIA case claim that his right to nonexempt government information was violated by a particular course of conduct—the government's refusal to release the specific information he requested. As *Mallick* indicates, that damages are available in a *Bivens* action but not in an LMRDA or FOIA case is not necessarily controlling; all three actions produce strong deterrent effects that serve to protect the rights of their intended beneficiaries. *Mallick,* 814 F.2d at 677 ("The congressional goal of deterring official abuse will be frustrated if unions can avoid disclosing information through protracted recalcitrance....").

Moreover, we are dealing here not with a vast pool of potential FOIA applicants, any of whom might seek to take Thomas Sinito's place in the litigation. An original requestor who goes to court to compel disclosure by the agency has a stake in the legal action which transcends that of "any person" who might seek the FOIA document. He has invested time, and in all likelihood money, in the action. Were it a cause of action sounding in property rights, *see Davis v. Oregon State Univ.,* 591 F.2d 493 (9th Cir.1978) (property interest in continued employment survives death of claimant); *Cheramie v. Orgeron,* 434 F.2d 721 (5th Cir.1970) (action for patent infringement survives death of party); *Bilanow v. United States,* 159 Ct.Cl.

93, 309 F.2d 267 (Ct.Cl.1962) (suit for damages for wrongful separation from government employment survives death of plaintiff); *Fletcher v. Grinnell Bros.,* 64 F.Supp. 778 (D.C. Mich.1946) (action to recover wages under Fair Labor Standards Act was *ex contractu* and survived death of plaintiff), seeking money rather than information, there would be little doubt that the cause of action survived his death and passed to his estate. Were the action seeking a precious book or return of tangible property, the same would be true. Here the action seeks information, which in many cases has equal value with money or tangible property, and there is no reason, absent statutory preclusion, why it should not similarly survive. The fact that other citizens could have brought a similar action originally in no way vitiates that conclusion.

## II.

■ However, a finding that the purposes of the FOIA may be advanced by permitting a FOIA cause of action to survive the death of the original requestor does not end the inquiry. We do not agree with the plaintiff that the FOIA requires anyone be allowed to step into the deceased plaintiff's shoes. The federal courts have institutional interests of their own in regulating the substitution of qualified parties even if a cause of action survives the death of the original plaintiff. That institutional regularity is the function of Federal Rule of Civil Procedure 25(a). *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1952 (1986) ("Rule 25 is procedural. It does not provide for the survival of rights or liabilities but merely describes the method by which the original action may proceed if the right of action survives.").

---

1. *See Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (violation of the United States Constitution may give rise to a cause of action for damages against federal officers).

■ · Rule 25 provides, "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party...." Fed.R.Civ.P. 25(a)(1). In the second part of our analysis in *Mallick*, we held that Rule 25 did not bar a fellow union member from substituting for the deceased plaintiff because the language of the LMRDA showed "the right to disclosure established by Congress is one shared without differentiation among all union members.... Since the union is under the same duty to all members enforceable by any of its members, it should not matter who the particular plaintiff is at any particular point in the lawsuit." 814 F.2d at 678. We allowed the union member's substitution because "there is no sensible basis for construing the procedural rules governing substitution of parties more rigidly than the rules providing for joinder and intervention of parties." *See id.* at 679 (citing Fed. Rules Civ. P. 20(a), 24(b), 25(a); Fed. R.App. P. 43(a)). Under the LMRDA, although the right of access to information may be prosecuted in the name of just one union member, it is viewed as a commonly held right that can be pursued by other members as well. In this case, however, Frank Sinito could not have joined his father's original lawsuit. Thomas Sinito did not bring a lawsuit under FOIA to acquit a right that was also violated as to his son. In addition, the FOIA requires each requestor to exhaust administrative remedies, *see Oglesby v. United States Dep't of the Army*, 920 F.2d 57 (D.C.Cir.1990), and Frank Sinito unquestionably did not do so.

■ Frank Sinito might, however, substitute for his father if he is found to be his father's legal representative under Rule 25. We have previously held that the purpose of the 1963 amendments to Rule 25, which replaced a harsher prior rule regarding proper party plaintiffs, was " 'to liberalize the rule and to allow flexibility in substitution of parties.' " *McSurely v. McClellan*, 753 F.2d 88, 98–99 (D.C.Cir. 1985) (per curiam) (citation omitted). Although it is generally accepted that the proper party for substitution must be a "legal representative" of the deceased, *see* 7C Wright, Miller & Kane, at § 1956 (citing *Mallonee v. Fahey*, 200 F.2d 918, 919 (9th Cir.1952) (opinion of Circuit Justice Douglas)), the addition of the word "successor" to the rule means that a proper party need not necessarily be the appointed executor or administrator of the deceased party's estate. *See Rende v. Kay*, 415 F.2d 983, 986 (D.C.Cir.1969) (compelling a plaintiff to "institut[e] machinery in order to produce some representative of the estate *ad litem*" would contravene the purpose of Rule 25 as amended). Thus, we have held not only that an executor or administrator of a decedent's estate is a proper party for substitution, but also that the distributee of a decedent's estate may be a "successor" of an estate that has been distributed and thus can be a proper party. *See McSurely*, 753 F.2d at 98–99 (listing cases); *Rende*, 415 F.2d at 985. Since there is no record evidence on whether Frank Sinito is a proper party for substitution under Rule 25, we remand the case to the district court to determine if he qualifies under the Rule.

Restricting substitution to Thomas Sinito's "successor[ ] or representative[ ]" goes a long way toward assuaging the government's concern that allowing a FOIA case to survive the death of the requestor would allow "any person," 5 U.S.C. § 552(a)(3), to step into the shoes of the decedent. It is axiomatic that Rule 25 limits properly substituted parties to those individuals who can adequately represent the interests of the deceased party. Under the FOIA, for example, a person who requests records pertaining to himself has rights that will sometimes—albeit rarely—differ from those of other, third-party requestors. *See Reporters Committee*, 489 U.S. at 771 ("Except for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure

is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request."). The FOIA was "clearly intended ... to give any member of the public as much right to disclosure as one with a special interest [in a particular document]," *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), but a privilege or privacy exemption that would block disclosure of documents requested by a third party might not always apply with equal force when the requestor *is* the subject of the sought-after documents. *See, e.g., United States Dep't of Justice v. Julian,* 486 U.S. 1, 14, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988) ("there is good reason to differentiate between a governmental claim of privilege for presentence reports when a third party is making the request and such a claim when the request is made by the subject of the report"); *Reporters Committee,* 489 U.S. at 771 ("the FBI's policy of granting the subject of a rap sheet access to his own criminal history is consistent with its policy of denying access to all other members of the general public"). This court has also recently held that the death of a person who is a subject of the requested material does not extinguish all of that person's privacy-related interests; accordingly a court must "account for the fact that certain reputational interests and family-related privacy expectations survive death." *Campbell v. United States Dep't of Justice,* 164 F.3d 20, 33 (D.C.Cir.1998). Moreover, the estate of a deceased requestor may have an interest in attorneys' fees to be recovered under the Act, as well as an interest in the waiver of any duplicating fees for which the requestor might have been eligible under the statute, *see* 5 U.S.C. § 552(a)(4)(A)(iii). Restricting the class of individuals who can substitute for the original requestor to "successors" and "legal representatives" strikes a balance, limiting substitution to "proper parties" in compliance with Rule 25(a)(1) while at the same time protecting any surviving rights of the requestor.

Finally, we take note of the government's acknowledgment in oral argument that Rule 25 substitution would not create extra work on the government's part or otherwise impede its interests. Indeed, it would seem to us more expeditious from the government's point of view to allow the appeal to be pursued on the record already made than to begin the process all over again with a new requestor.

### CONCLUSION

For the reasons outlined above, we hold that a FOIA cause of action may survive the death of the requestor, and we remand this case for the district court to determine whether Frank Sinito, the requestor's son, can properly substitute for his deceased father under Rule 25.

*So ordered.*