### TRANS-PACIFIC POLICING AGREEMENT, et al., Appellants,

v.

### UNITED STATES CUSTOMS SERVICE, Appellee.

No. 98–5253.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1999.

Decided June 1, 1999.

Paul M. Tschirhart argued the cause for appellants. With him on the briefs were Jeffrey F. Lawrence, Heather Spring and R. Frederic Fisher. Cindy G. Buys entered an appearance.

Kimberly Nelson Brown, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Trans–Pacific Policing Agreement ("TPPA" or "appellants"), an association of registered ocean common carriers, is charged by federal statute with policing exporters who send shipments into the United States. One principal function of TPPA is to investigate and take action to prevent the mischaracterization of cargo in sealed marine containers. Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, TPPA sought shipping code numbers from the United States Customs Service ("Customs") in order to facilitate investigations of exporters' shipments. Customs rejected TPPA's request, claiming that release of the code numbers would result in serious competitive injury to importers in the United States and, thus, that the information sought was exempt from disclosure under FOIA Exemption 4, id. § 552(b)(4). TPPA filed suit in District Court, and the court granted summary judgment in favor of Customs, finding that Customs had met its burden under Exemption 4.

On appeal, TPPA claims that Customs could have disclosed redacted portions of the code numbers without causing competitive harm to United States importers, and that the District Court erred in not making a segregability finding. Customs responds that, because TPPA made no request for redaction before the District Court, the claims on appeal should not be considered by this court and the judgment of the District Court should be affirmed. Because the District Court never considered the possibility of redaction, we believe that a remand is warranted in this case.

There is no doubt that appellants could have helped to save judicial resources by presenting the full theory of their case as effectively before the trial court as it was presented during the arguments before this panel. Nonetheless, we see no point in dismissing this lawsuit. Both sides agree that appellants could and would simply file a new lawsuit if the case were dismissed. And counsel for Customs concedes that there is really nothing of substance to be gained by requiring appellants to file a new FOIA request at the administrative level; it is also clear that a new lawsuit will be costly in terms of additional time, expense, and wasted judicial resources. In these circumstances, we believe that a remand is warranted.

## I. BACKGROUND

### A. Factual Background

TPPA is an association of registered ocean common carriers. Appellant Nippon Yusen Kaisha is an individual ocean carrier, as well as a member of the association. The association was formed pursuant to the Shipping Act of 1984, 46 U.S.C. app. §§ 1701–1720, and is authorized under the Act to investigate and take action to correct certain trade "malpractices" prohibited by the Act. See id. § 1709(a)(1), (b)(1)-(4). Among the prohibited malpractices, as relevant here, is the mischaracterization of cargo in sealed marine containers, which allows unscrupulous exporters to obtain freight rates below the lawful filed tariff rate applicable to a particular commodity. On some occasions the ocean carrier is an accomplice in violating the law and on other occasions the carrier has been defrauded.

Many foreign exporters shipping goods into the United States do so via ocean carrier. Using information provided by the exporter, the carrier prepares an Inward Vessel Manifest ("IVM"), which provides a general description of the goods contained in each shipment. See 19 C.F.R. § 103.31(e)(3) (1998). Customs requires the carrier to file the IVM upon entry into

the United States, but it is usually filed before the vessel arrives in port. The information contained in the IVM is regularly released for public distribution under Customs regulations. *See id.* § 103.31(a)(3), (e). When the carrier provides Customs with the IVM, Customs assigns the shipped goods one or more entry numbers. Each individual import transaction receives a unique entry number, which Customs then uses for all official purposes.

When the importer is notified that its goods have arrived, Customs requires that the importer—not the carrier—complete an Import Declaration. On this document, the importer must provide detailed information about the shipment, in order to enable Customs to, *inter alia,* assess properly the duties that may be due on that shipment. As part of the Import Declaration, the importer must include a Harmonized Tariff Number ("HTS number") applicable to the goods. The HTS number corresponds to a specific legal description within the universe of imported merchandise. The complete list of HTS numbers is set forth in the Harmonized Tariff Schedule that the Government publishes each year. This published Schedule is akin to a dictionary, in that it assigns a precise definition to each ten-digit HTS number. The definitions are highly specific, and may even include the value of the goods. For example, Customs has over 1900 different HTS numbers for goods that could generally be described as "ready made garments." *See, e.g.,* Appendix ("App.") 246–57. In general, each digit in an HTS number adds an additional layer of specificity to the description of the goods, in the same way that biologists' use of phylum, order, genus, and species identifies living organisms to increasing degrees of specificity. Although the Schedule is published annually, Customs normally does not release information from Import Declarations, which apply HTS numbers to specific shipments of goods.

The IVMs and the Import Declarations each contain similar information—a description of the goods being shipped—but, as the District Court noted, and as the parties agree, "they are very different documents, prepared by different persons, and prepared under different circumstances." *Trans-Pacific Policing Agreement v. United States Customs Serv.,* Civ. No. 97–2188, at 3 (D.D.C. May 14, 1998) (Memorandum Opinion) ("Memorandum"), *reprinted in* App. 273. The IVM is prepared by the carrier, generally with details supplied by the exporting shipper. As noted above, the description of the goods contained in the IVM need only be of a general nature. By contrast, it is the importer who must file the Import Declaration, using the far more precise HTS numbers, which provide a description of the shipment that is significantly more detailed than the one found on the IVM. Moreover, an importer completes the Import Declaration under penalty of law and under the watchful eye of Customs. Therefore, it is undisputed that Import Declarations generally contain a more accurate description of the shipped goods than do IVMs—not only because the HTS numbers are more precise, but also because the importers filling out the Import Declarations have less incentive and ability to mischaracterize the shipment than do those filling out the IVMs.

TPPA enforces the Shipping Act by ensuring that exporters do not mischaracterize their cargoes in order to receive lower tariff rates. It is indisputable that access to the HTS numbers would greatly facilitate the work of TPPA officials. According to appellants, use of those numbers is the easiest and cheapest method of checking the accuracy of the descriptions contained in the IVMs, and is therefore the most efficient method of enforcing federal law and reducing commercial fraud in the shipping industry. The alternative—physically inspecting each shipment—is, according to appellants, expensive, time-consuming, and unduly intrusive of honest shippers and importers. *See* Appellants' Opening Brief at 6–7.

## B. Procedural Background

On September 25, 1996, appellants wrote to Customs, requesting disclosure of "Customs['s] harmonized numbers for actual commodity description[s]" of 68 shipments, which appellants identified by their entry numbers. *See* Letter from Jay Tolentino, NYK Line, Inc., to Audrey Adams, Customs (Sept. 25, 1996), *reprinted in* App. 15–16. On October 8, 1996, Customs responded by refusing to release the requested HTS numbers, claiming in only one sentence that such information fell within FOIA Exemption 4, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4); *see* Letter from Adams to Tolentino (Oct. 8, 1996), *reprinted in* App. 17.

On November 12, 1996, appellants appealed Customs's initial refusal to the Customs FOIA Appeals Officer. *See* Letter from R. Frederic Fisher et al., Counsel for Appellants, to FOIA Appeals Officer, Customs (Nov. 12, 1996), *reprinted in* App. 20–26. They explained that the purpose of their FOIA request is "to compare the commodity declaration made ... to the ocean carrier (as subsequently filed with Customs on the [IVM] ) with the commodity declaration made ... directly to Customs [on the Import Declaration]." *Id.* at 2, *reprinted in* App. 21. They argued that the requested information is no different in kind than the information released to the public on the IVMs, but it is more likely to be accurate. According to appellants, then, "[i]f the two commodity declarations for the same shipment differ, the only ... reason for according confidential treatment of the commodity declaration to Customs would be concealment of commercial fraud and violations of the Shipping Act." *Id.* at 4, *reprinted in* App. 23. Moreover, appellants noted that local Customs field offices had, in the past, provided them with the HTS numbers for certain shipments. *See id.* (citing Letter from Alice M. Rigdon, Customs, to Dan Fetters, Hyundai American Shipping Agency (Aug. 14, 1996), *reprinted in* App. 18–19).

On January 16, 1997, the Appeals Officer affirmed the initial determination that the requested information fell within Exemption 4, explaining that "Customs has long considered information on entry documents to be confidential information, exempt from disclosure." Letter from Marvin Amernick, Customs, to R. Frederic Fisher et al. 2 (Jan. 16, 1997), *reprinted in* App. 28.

Appellants subsequently filed suit in District Court, and the parties filed cross motions for summary judgment. Without acting on appellants' request for oral argument, the court granted summary judgment in favor of Customs. *See* Memorandum at 10, *reprinted in* App. 280. The trial court determined that Customs, by the submission of detailed affidavits, had carried its burden and demonstrated that the release of the HTS numbers, when linked by an entry number to a specific shipment of goods, presented a threat to the competitive position of the importers who provide this information. *See id.* The court also determined that the isolated release of HTS numbers in the past by various Customs field offices did not affect the disposition of the instant case. *See id.* at 9, *reprinted in* App. 279 (citing *Medina-Hincapie v. Department of State*, 700 F.2d 737, 742 n. 20 (D.C.Cir.1983) (holding that unauthorized disclosure of documents does not constitute a waiver of the applicable FOIA exemption)). This appeal followed.

## II. ANALYSIS

### A. FOIA Exemption 4

■ The Freedom of Information Act requires that federal agencies comply with requests to make their records available to the public, unless the requested records fall within at least one of nine categories of exempt material. *See* 5 U.S.C. § 552(a), (b). Pursuant to Exemption 4, FOIA exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). There is no dispute that the HTS numbers

requested by appellants are "commercial" and are "obtained from a person," *i.e.*, the importer. The issue in this case is whether the numbers are "confidential." Where, as here, the information is supplied to the agency under compulsion, it is treated as "confidential" only if its disclosure is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974) (footnote omitted). Customs did not contend before the District Court, nor did it argue on appeal, that disclosure of the numbers would impair any Government functions. Therefore, both parties agree that the HTS numbers are exempt from disclosure only if Customs can establish that disclosure is likely to cause substantial harm to the competitive position of the importers who supplied the information. We review *de novo* the District Court's grant of summary judgment in favor of Customs. *See Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C.Cir.1997).

### B. The Merits

In their briefs to this court, appellants claim that *they do not need all ten digits of each HTS number* in order to evaluate the accuracy of the information contained in the IVMs. Rather, they need only enough digits in each number to compare, with the same degree of specificity, the information provided by the exporters on the IVMs. In other words, TPPA apparently would be satisfied if Customs disclosed only, say, four or six digits of each HTS number, and segregated out the remaining digits that provide the highly specific, confidential information about each shipment. Customs responds that appellants waived this argument for redacted disclosure by failing to raise it before the District Court, and that, if appellants want to raise the issue of segregability, they must do so in a new FOIA petition. Appellants acknowledge that they did not expressly seek a segregability finding in their District Court plead-

ings, but claim that it never occurred to them that Customs was treating their request as a request for all ten digits, when it is obvious (at least to appellants) that only four or six digits would serve their purpose. Regardless, they argue, both the agency and the District Court had an affirmative obligation to consider segregability *sua sponte*.

As an initial matter, we note that, in their briefs to this court and at oral argument, appellants did not seriously dispute the District Court's determination, based on detailed affidavits submitted by experienced Customs officials, that release of the unredacted *ten-digit* HTS numbers would likely cause importers serious competitive harm. The affidavits submitted by Customs explain precisely how a knowledgeable person can, by linking HTS numbers to specific shipments, uncover information concerning the nature, cost, profit margin, and origin of the shipments. As the District Court held, a person could then "use the HTS numbers to unlock some of the ambiguities and inaccuracies on the [IVM], and thereby gain a picture of an importer's intentions, profit margin, and other plans." Memorandum at 8, *reprinted in* App. 278. Appellants have given us no reason to question the District Court's judgment in this regard. We have no doubt that, based on the record before the District Court, Customs met its burden under Exemption 4, at least with respect to the unredacted ten-digit HTS numbers.

■ The issue, then, is whether we should affirm the grant of summary judgment and require appellants to file a new, more specific FOIA request, or, instead, reverse and remand to the District Court for a determination as to whether the HTS numbers can be redacted in order to avoid application of Exemption 4. We believe that the latter option is the more appropriate disposition of this case.

FOIA specifically requires that, if a requested record contains information that is exempt from disclosure under one of the FOIA exemptions, "[a]ny reasonably seg-

regable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see Oglesby v. United States Dep't of the Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996) ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." (quoting 5 U.S.C. § 552(b))). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977).

In *Board of Trade v. Commodity Futures Trading Comm'n,* 627 F.2d 392, 401 (D.C.Cir.1980), this court described the appropriate procedure for segregating exempt material from non-exempt material:

> Procedurally, when faced with a question of Exemption 4 coverage, the determining body—agency or court—must first examine the requested documents, with details ... not deleted, and ascertain whether they contain protected information. If, after applying the appropriate tests, the body concludes that all or part of the sought-after material is shielded by this exception to [FOIA], it must then determine whether suitable deletions of identifying or exempt matter may be made which will enable it to reveal the remaining information. This technique, which we have employed in numerous cases, derives from express provisions of [FOIA] and its legislative history as well.

(citations, footnotes, brackets, and internal quotation marks omitted). Appellants argue that, because the first four or six digits of each HTS number contain a description of the shipment that is no more specific than the description already contained in the publicly-released IVMs, release of those digits would not cause the importers any competitive harm. However, because it is undisputed that the HTS number descriptions are more *accurate* than the descriptions contained in the

IVMs, release of the redacted HTS numbers would aid appellants in their public mission and duty to combat ocean carrier fraud. Appellants therefore claim that the District Court erred in not following the *Board of Trade* procedure and in not ordering Customs to segregate out the digits in each requested HTS number that would provide appellants with a greater degree of specificity than they need. Moreover, they assert, because *Board of Trade* places responsibility for reasonable segregation on the agency as well as the court, Customs violated FOIA when it did not release the first four or six digits of the HTS numbers in the first instance.

Customs responds that the District Court's silence on the issue of segregability is perfectly appropriate: because appellants never raised the prospect of redacted HTS numbers, the court had no reason to raise it *sua sponte,* and this court should not consider it now. *See* Brief for Appellee at 12–13. Customs argues that *Board of Trade* and § 552(b) do not create an affirmative duty on the part of the agency or the court to come up with segregability proposals that the FOIA plaintiff never even asked for. Customs also suggests that the HTS numbers are not reasonably segregable and that it would be unduly burdensome for the agency to do what TPPA seeks.

Customs concedes that each digit in an HTS number represents a greater degree of specificity with respect to the description of the commodity being imported. Agency counsel further conceded at oral argument that, if the HTS numbers were simply translated into words, they undoubtedly would be "records" subject to the normal FOIA rules—including § 552(b), which requires reasonable segregation. Thus, appellants have raised a plausible claim that the HTS numbers themselves are also "records" subject to segregability under FOIA. The question is whether appellants were required to expressly suggest to the agency or the

District Court that the agency segregate out the exempt portions of these "records."

■ In hindsight, under *Board of Trade* and other circuit precedent, and pursuant to § 552(b), we believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte*. This court has remanded in numerous cases in which the district court failed to make such a finding, although we have never squarely held that the court must make a segregability finding even if the issue has not been specifically raised by the FOIA plaintiff. *See, e.g., Kimberlin v. Department of Justice*, 139 F.3d 944, 949–50 (D.C.Cir.1998) (remanding to district court, because court had not made segregability finding); *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 252 (D.C.Cir.1993) ("[A] district court clearly errs when it approves the government's withholding of information under [FOIA] without making an express finding on segregability."); *Schiller v. NLRB*, 964 F.2d 1205, 1209–10 (D.C.Cir.1992) (remanding to district court, where "[b]oth the [agency] and the district court appear to have overlooked the segregability requirement," and where the "district court did not hold the [agency] to its obligation to disclose reasonably segregable information"); *cf. Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C.Cir.1991) (" '[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.' " (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 744 (9th Cir.1979))). Moreover, appellants' failure to raise segregability certainly was not a knowing waiver of that argument. At most, it raised the possibility of a mere forfeiture. *See University of the Dist. of Columbia Faculty Ass'n/NEA v. District of Columbia Fin. Responsibility and Management Assistance Auth.*, 163 F.3d 616, 625 (D.C.Cir. 1998) (citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In short, a remand in this case is consistent with § 552(b) and the aforecited cases.

Furthermore, Customs concedes that, if the case were dismissed, appellants could file another, more specific FOIA request, asking for as many digits in the HTS numbers as Customs could release without risking competitive harm. If the agency chose to challenge this hypothetical new request under Exemption 4, the issue would then be presented to the district court (and possibly this court). Agency counsel conceded at oral argument that Customs had nothing of substance to gain by requiring appellants to file a new FOIA request at the administrative level. Thus, as a matter of judicial economy and pursuant to our very broad remedial authority, *see* 28 U.S.C. § 2106, it makes sense to remand so that the District Court—which is already familiar with the record in this case—can supplement the record and make factual findings in the first instance on appellants' claims. *See Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 580 (D.C.Cir.1987) ("[T]he interests of judicial finality and economy have special force in the FOIA context. . . .") (citation and internal quotation marks omitted); *Marks v. CIA*, 590 F.2d 997, 1004 n. 5 (D.C.Cir.1978) (Wright, C.J., concurring and dissenting) (noting that "[d]elay . . . is particularly inappropriate in a FOIA suit"). This reasoning holds especially true where the agency gives us no good reason *not* to remand.

In support of its position that appellants should be required to file a new FOIA request, the agency cites only *American Federation of Government Employees, Local 2782 v. United States Department of Commerce*, 907 F.2d 203 (D.C.Cir.1990) ("*AFGE*"). In that case, appellants, for the first time on appeal, offered to narrow their FOIA request. We declined to evaluate the newly-narrowed request *de novo*, because

[i]t is our office . . . to review the decision of the district court in the case that the appellants, having duly exhausted their administrative remedies, there pre-

sented for decision; it is distinctly not our role to pass *de novo* upon a request for disclosure that is narrower than the request that was presented to the agency.

*Id.* at 208. Our decision to remand in this case is in no way inconsistent with the court's disposition in *AFGE*, because appellants here are not asking this court to decide *de novo* whether redacted HTS numbers fall within Exemption 4. As the court stated in *AFGE*, we are in no position to evaluate a claim for which no record has been established in the district court. For example, we have no way of knowing whether the disclosure to appellants of only four digits would cause substantial harm to the competitive position of the importers. It is perfectly within our remedial authority, however, to remand to the District Court so that a record *can* be made on this issue, particularly when agency counsel conceded that nobody's interests would be served by forcing appellants to pursue their request again at the administrative level.

As noted above, our disposition in this case is fully consistent with previous FOIA cases in which this court has remanded for further development of the record in light of matters that did not arise until the case was in this court on appeal. *See, e.g., Sinito v. United States Dep't of Justice,* 176 F.3d 512, 514 (D.C. Cir.1999) (holding that a cause of action under FOIA survives the death of the original requestor, as long as the substitute requestor is found to be the original requestor's legal representative under Rule 25 of the Federal Rules of Civil Procedure). In *Sinito* the court noted

> the government's acknowledgment in oral argument that Rule 25 substitution would not create extra work on the government's part or otherwise impede its interests. Indeed, it would seem to us more expeditious from the government's point of view to allow the appeal to be pursued on the record already made than to begin the process all over again with a new requestor.

*Id.* at 1026. Similarly, in *National Parks,* after conclusively defining for the first time the term "confidential" as used in Exemption 4, we remanded to the district court for a determination as to whether the requested information fell within this newly-minted definition. *See* 498 F.2d at 770–71; *see also Lepelletier v. FDIC,* 164 F.3d 37, 48–49 (D.C.Cir.1999) (refining test for nondisclosure under Exemption 6, and remanding to district court for factual determination in accordance with reformulated test); *cf. Lehrfeld v. Richardson,* 132 F.3d 1463, 1467 (D.C.Cir.1998) (upholding agency's nondisclosure where plaintiff had failed to expressly invoke FOIA in his initial request, and holding that "it would be futile to require [plaintiff] to file a new request expressly invoking [FOIA]" where it was clear that the documents sought were exempt from disclosure).

In short, the decision in *AFGE* does not state a binding rule of law that forecloses remand in a case of this sort. Quite the contrary, as the case law shows, and as § 552(b) requires, this court has not hesitated to order further proceedings before the district court on remand to fairly resolve claims under FOIA. There is certainly no doubt that the validity of Exemption 4 to block release of the HTS numbers was the issue before the District Court. Understandably, due to the somewhat peculiar nature of the information sought—a numerical code in which the numbers represent increasing degrees of specificity— the District Court did not make a segregability finding, as § 552(b) and *Board of Trade* require. In any event, pursuant to § 552(b) and *Board of Trade,* we exercise our authority to remand.

## III. CONCLUSION

For the reasons stated above, the judgment on appeal is reversed and the matter is remanded to the District Court for the purpose of determining whether disclosure of redacted HTS numbers poses a likelihood of substantial harm to the competi-

tive position of the importers from whom the numbers were obtained.

*So ordered.*