## COASTAL DELIVERY CORP., Plaintiff,

### v.

## UNITED STATES CUSTOMS SERVICE, Defendant.

### No. CV 02–3838WMB(MANx).

United States District Court, C.D. California.

March 17, 2003.

Order Denying Reconsideration June 13, 2003.

---

Elon A. Pollack, Elon A. Pollack Law Offices, Los Angeles, CA, for Coastal Delivery Corporation, a California corporation.

Jan L. Luymes, AUSA—Office of U.S. Attorney, Civil Division, Los Angeles, CA, for United States Customs Service.

ORDER GRANTING DEFENDANT UNITED STATES CUSTOMS SERVICE'S MOTION FOR SUMMARY JUDGMENT

WM. MATTHEW BYRNE, Jr., Judge.

## I. Introduction

To help determine damages in a different, unrelated lawsuit, plaintiff Coastal Delivery Corp. ("Coastal") filed a complaint under the Freedom of Information Act ("FOIA") seeking information regarding the number of examinations performed on merchandise arriving into the Los Angeles/Long Beach seaport. Defendant, the United States Customs Service ("Customs"), maintains that the information is protected under exemptions to FOIA because terrorists and others could use the information to discover the rate of inspection and then direct their containers to vulnerable ports.

### A. Facts

The following facts are undisputed unless stated otherwise. Plaintiff, a trucking company, entered into an contract with a company called NISCO Pacific Warehouse ("NISCO"), a Centralized Examination Station ("CES") for the U.S. Customs Service. When containers arrive at the Los Angeles/Long Beach port, Customs designates certain containers for inspection off-site at a Centralized Examination Station. Under the contract, plaintiff was to be the exclusive transporter of designated containers from the port to NISCO. NISCO hired other trucking companies, and plaintiff sued for breach of contract. Plaintiff won the suit in 1998, and the jury awarded damages. In response to NISCO's request for new trial, the trial court retained the verdict on liability but ordered a new trial on damages because of insufficient evidence in the first trial. The damages retrial begins March 27, 2003.

NISCO has been less than forthcoming with discovery regarding the amount of business given to truckers other than plaintiff. To get better information on that point, plaintiff filed a FOIA request with Customs in Long Beach on October 12, 2001, asking for the number of Merchandise Examination Team ("MET") and Contraband Enforcement Team ("CET") examinations at the Los Angeles/Long Beach port for the years 1998, 1999, 2000 and 2001.[1] Customs denied this request on October 19, 2001, and plaintiff appealed on October 29, 2001. Customs made a final determination denying plaintiff's request on February 20, 2002. Plaintiff filed this complaint on May 10, 2002.[2]

On August 29, 2002, Customs produced five documents to plaintiff. Four of them are charts entitled "Contraband Enforcement Team Measurement/Workload Statistics," showing the number of containers examined at the docks and the number of containers examined off-site for the los Angeles/Long Beach port for 1998, 1999, 2000 and 2001. The numbers have been redacted. The fifth document is called "Threat Assessment," and it contains one sentence which reads: "The Contraband Enforcement Team examined approximately [___] containers in the dock, and approximately [___] containers at the CES

---

1. Plaintiff refers to a "Mobile Examination Team," but defendant asserts that the only MET in existence during the relevant period was a Merchandise Examination Team.

2. The parties agree that it doesn't matter why plaintiff wants the documents. Either the information is available under FOIA, or it fits

in one of the exemptions–there is no accommodation in FOIA for good cause or special needs. Therefore, the background of the Coastal–NISCO litigation is relevant only to explain what information plaintiff seeks, and to understand the time pressure–the damages trial begins March 27, 2003.

station." Again, the numbers are redacted.

On November 25, 2002, plaintiff wrote to defendant asking for the same information, this time enclosing documents Customs had produced to plaintiff in 1999, including a memorandum that discusses the average monthly numbers of examinations at each of the CES locations in "the last fiscal year," 1998. Defendants maintain that the only documents available for the years 1998–2001 are the redacted documents produced to plaintiff, showing the gross number of CET (Contraband Enforcement Team) examinations. Defendants claim there are no documents showing the numbers of MET (Merchandise Examination Team) examinations for that time period.

## B. Preliminary and Related Matters

### 1. Defendant's Ex Parte Application to File an Over–Sized Reply

Defendant requested leave to file a brief that is 30 pages, 5 pages over the maximum allotment. Plaintiff has not filed an opposition to this request. This application is GRANTED.

### 2. Plaintiff's Request to Cross–Examine Defendant's Declarant

Plaintiff filed this request in response to the declarations of Gerald Rankin. Cross-examination is not appropriate for this summary motion, because the request is meant to be entertained only for "motions where an issue of fact is to be determined." *See* Local Rule 7–8. Moreover, plaintiff made clear in its papers and at the hearing that it does not dispute the comprehensiveness of the search for documents, the main subject of Mr. Rankin's declarations. Rather, it takes issue with the statement in Mr. Rankin's Supplemental Declaration that: "the withheld information includes examinations conducted at other centralized examination stations and warehouses besides NISCO. In addition,

many of the examinations identified in the CET Hold Forms are conducted at locations other than centralized examination stations [CESs], such as the terminals and/or docks." Rankin Supp. Decl. ¶ 9. Plaintiff claims that this statement is not true, because it believes that NISCO was the only CES where CET examinations were conducted during the years in question. Defendant disagrees and asserts that there were other warehouses where CET examinations may have occurred.

Plaintiff admits that the number of CESs in 1998–2001 is not a material fact. Given these circumstances, plaintiff's request to cross-examine is DENIED.

## II. Legal Standard

### A. Summary Judgment in General

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court must view the facts in light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of

fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party. On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party satisfies its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### B. Summary Judgment in FOIA Cases

Both parties agree that summary judgment is appropriate in FOIA cases once documents at issue are properly identified, and both cite the same case for this conclusion: *Miscavige v. IRS,* 2 F.3d 366 (11th Cir.1993). At the hearing for this motion, the parties also agreed that there are no triable issues of fact and that summary judgment is proper in this case.

### III. Discussion

In enacting FOIA, Congress codified "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Vaughn v. United States,* 936 F.2d 862, 865 (6th Cir.1991) (citing *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Under FOIA, this Court has jurisdiction to enjoin an agency from withholding records and to order the production of records

improperly withheld. 5 U.S.C. § 552(a)(4)(B). In this case, the parties agree that the documents are agency records, and that they have been withheld the dispute is whether the records were withheld improperly.

Defendant asserts that the (b)(7)(E) and the (b)(2) exemptions apply to justify protection of the information plaintiff seeks.

### A. The *Vaughn* Index

As a preliminary matter, plaintiff argues that summary judgment should be granted in its favor because Customs has not satisfied its obligation to provide affidavits with enough detail to determine whether the information should fit within one of the statutory exemptions in § 552(b). In a FOIA dispute, a defendant must generate a *Vaughn* Index, which "usually consists of a detailed affidavit, the purpose of which is to 'permit the court system effectively and efficiently to evaluate the factual nature of the disputed information.'" *Vaughn v. United States,* 936 F.2d 862, 865 n. 1 (6th Cir.1991) (citing *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989), quoting *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973)).

Defendant does provide more than adequate explanation of its position regarding exemption in its *Vaughn* Index—it is clear that plaintiff simply disagrees with defendant's conclusion that release of the information will risk circumvention of the law. Disagreeing with the conclusion is not a reason to challenge the *Vaughn* Index—such a challenge is only appropriate when the defendant does not provide sufficient explanation of its position to allow for disagreement. Therefore, plaintiff's argument that defendant's *Vaughn* Index is insufficient is without merit.

## B. Exemption under 5 U.S.C. § 552(b)(7)(E): Law Enforcement Purposes

Subsection (b)(7)(E) states that the disclosure mandated in section 552:

does not apply to matters that are ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

### 1. Law Enforcement Purposes

The inquiry of whether the information is for "law enforcement purposes" begins with the determination of whether the agency has a law enforcement function. *Church of Scientology v. Dept. of the Army,* 611 F.2d 738, 748 (9th Cir.1980) ("The term 'law enforcement purpose' has been construed to require an examination of the agency itself to determine whether the agency may exercise a law enforcement function," (citation omitted.)). Plaintiff concedes that Customs has a clear law enforcement mandate.

■ Agencies with a clear law enforcement mandate need only establish a rational nexus between enforcement of a federal law and the information withheld based on a (b)(7) exemption. *Church of Scientology,* 611 F.2d at 748. Customs argues that there is a rational nexus between the withheld information and its law enforcement mandate because the numbers allow Customs to track the overall effectiveness of its examination technique, and evaluate both its commercial enforcement strategy and its border security responsibilities.

If the agency did not have a clear law enforcement mandate, defendant would need to show that the requested information was compiled for law enforcement purposes. Because both parties agree that Customs has a law enforcement mandate, defendant need only show a rational nexus between this mandate and the information requested, and defendant has satisfied this burden.

### 2. Techniques or Guidelines for Law Enforcement Investigations

Once it is established that the withheld information was compiled for law enforcement purposes, the next inquiry is whether release of the information would disclose techniques and procedures for law enforcement investigations or prosecutions, or whether it would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Assuming that the number of containers examined is a guideline rather than a technique or a procedure, defendant would then need to show that revealing this information could reasonably be expected to risk circumvention of the law. Plaintiff argues that the information requested could not reasonably be used to circumvent the law because the numbers of containers examined alone does not reveal any information that could be used to circumvent the law. Plaintiff protests that it is not seeking percentages of containers searched, merely the raw numbers. However, the total number of containers that pass through the Los Angeles/Long Beach Port is easily accessible information. Therefore, although plaintiffs are not interested in the percentages for their discovery purposes, they are asking for information that, together with other, publicly available information could reveal the percentage of containers examined.

In addition, plaintiff asserts that they are entitled to disclosure because already have copies of "CET Hold" forms, which are in the public domain because NISCO prepared them for submission to customs and produced them to plaintiff pursuant to a document request. These forms show the container number, the importer, the commodity, the exam type and other information. Plaintiff argues that this information, which Customs does not protect, is more indicative of law enforcement technique and procedures than the total number of containers searched at the port. Even if defendant did use the CET Hold forms for information regarding the number of containers examined at the port, which defendant denies, it does not follow that NISCO's compliance with plaintiff's discovery request would make the requested numbers—derived in part from the information in the documents—subject to disclosure under FOIA.

Plaintiff also argues that the total numbers for 1998–2001 could not reasonably be used to circumvent the law because the rate of examination at each port is constantly changing. Plaintiff cites to a bulletin Customs issued that stated "CES applicants should be aware that the number of inspections may fluctuate ..." Plaintiff also cites to changes in examination programs since 2001, namely, the addition of two new anti-terrorism programs. Plaintiff argues that because of these new programs, the numbers for pre–2001 examinations could not reveal any information about current examinations. Plaintiff also argues that Customs' assertion that terrorists and smugglers would use the information about the rate of examination at different ports to redirect contraband to a more vulnerable port is "anything but reasonable" for the reasons stated above.

■ While it is true that knowing the rate of examination at different ports may not be the best way to avoid detection when smuggling contraband into the U.S., plaintiff's arguments that potential terrorists and smugglers could not and would not use the information to try to avoid detection is unpersuasive. Defendant has provided declarations sufficient to establish that disclosure of this information could reasonably risk circumvention of the law. Plaintiff has offered no support for its assertion that the new anti-terrorism programs would make the past trends in rate of examination worthless to people trying to evade Customs laws.

■ It is clear that once Customs discloses this information to plaintiff, it must disclose the same information to anyone who requests it. There is no room for confidentiality agreements, nondisclosure agreements, or other selective revelation in FOIA jurisprudence. The Ninth Circuit has held that "FOIA does not permit selective disclosure of information only to certain parties, and [ ] once the information is disclosed to [plaintiff], it must also be disclosed to all members of the public who request it." *Maricopa Audubon Society v. U.S. Forest Service*, 108 F.3d 1082, 1088 (9th Cir.1997). The reason for requesting the information is irrelevant; if a drug smuggler or a terrorist were to request this information after Custom has already divulged it to plaintiff, FOIA would require disclosure.

Although the exact information for each port would not be available under a prior disclosure theory, release of the information under a FOIA analysis must account for the possibility that requests for this information at all ports will undergo the same FOIA analysis, and each cannot be considered in isolation. Therefore, it is not enough to say that people cannot use the rate of examinations at Los Angeles/Long Beach alone to circumvent the law, because this fact will be true for each request at each port, until a potential

smuggler has compiled the information which, in combination, gives him enough to direct his merchandise to vulnerable ports. As expressed in *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1064–65 (3d Cir. 1995), "[t]he information is not of obvious importance in itself; but, if it were released to plaintiff and combines [sic] with other known data, in a 'mosaic' analysis, it could lead to identification of substantive information in the file which has been withheld."

Therefore, defendant has shown that it has a law enforcement mandate, that there is a rational nexus between the information at issue and this mandate, that revealing this information would at least disclose a guideline for law enforcement investigations or prosecutions, and that such disclosure could reasonably be expected to risk circumvention of the law.

### C. Exemption under 5 U.S.C. § 552(b)(2): Internal Rules and Practices

Section 552(b)(2) provides that the broad disclosure mandate under FOIA "does not apply to matters that are ... related solely to the internal personnel rules and practices of an agency." This exemption covers "law enforcement materials, the disclosure of which may risk circumvention of an agency regulation." [3] *Maricopa Audubon Society v. U.S. Forest Service*, 108 F.3d 1082, 1086 (9th Cir.1997) (citing *Hardy v. Bureau of Alcohol, Tobacco and Firearms*, 631 F.2d 653, 656 (9th Cir.1980)).

■ The D.C. Circuit has identified a two-part test for determining whether the (b)(2) exemption applies: if a document is predominantly internal and if its disclosure would significantly risk circumvention of agency regulations or statutes, the docu-

ment is exempt from disclosure. *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073–74 (D.C.Cir. 1981). Defendant argues that the documents are predominantly internal as defined in *Crooker*: documents "designed to establish rules and practices for agency personnel ... involv[ing] no 'secret law' " that the agency purports to impose on members of the public, 670 F.2d at 1073. The *Crooker* Court also acknowledged the rule in the Ninth Circuit—still in force today—"that law enforcement materials, disclosure of which may risk circumvention of agency regulation, are exempt from disclosure." *Id.* at 1074 (citing *Hardy*, 631 F.2d at 657).

■ Therefore, by either test, and most importantly by the Ninth Circuit test, defendant has established that exemption (b)(2) applies for the reasons discussed in the (b)(7)(E) section above, namely, that the information has a law enforcement purpose and that disclosure of the information would risk circumvention of agency regulations as well as the law.

### D. Prior Disclosure

■ Plaintiff argues that defendant has disclosed these numbers before, and therefore defendant should disclose the requested information to plaintiff now. However, for Customs to have waived its right to argue exemptions, it must have disclosed the exact information at issue. *See Mobil Oil Corp. v. United States Environmental Protection Agency*, 879 F.2d 698, 701 (9th Cir.1989) ("release of certain documents waives FOIA exemptions *only for those documents released.*" (emphasis in original)). The *Mobil Oil* Court quoted the holding of a D.C. district court with approval: "a District of Columbia district court has established a legal standard for waiver of further confidential treatment of an exempt document that requires that

---

**3.** These materials are sometimes referred to as "High 2" information, while the more trivi-

al internal personnel materials are referred to as "Low 2" information.

the requester demonstrate 'that the withheld information has already been *specifically* revealed to the public and that it appears to *duplicate* that being withheld.'" 879 F.2d at 701 (emphasis in original) (quoting *United States Student Ass'n v. CIA,* 620 F.Supp. 565 (D.D.C.1985)). Plaintiff admits that it is merely the same category of information, not the exact information, that has been disclosed. Therefore, plaintiff's prior disclosure argument lacks merit.

## IV. Conclusion

The piece of information plaintiff seeks, on its own, may not aid a would-be lawbreaker in getting contraband into the U.S. However, this information combined with other information–i.e., the number of containers examined at other ports, information that is also innocuous on its own– could reasonably be used to circumvent law enforcement practices. Therefore, exemptions (b)(7)(E) and (b)(2) apply, and the information has been properly withheld. Defendant's motion for summary judgment is GRANTED, and plaintiff's summary judgment motion is DENIED. IT IS SO ORDERED.

ORDER DENYING PLAINTIFF'S REQUEST THAT THE COURT INDICATE ITS WILLINGNESS TO ENTERTAIN OR TO GRANT PLAINTIFF'S MOTION FOR RECONSIDERATION

## I. Introduction

This Court heard the parties' cross motions for summary judgment on March 12, 2003, and issued an order granting summary judgment in favor of defendant Customs on March 14, 2003. The order was entered on March 18, 2003,[1] and plaintiff filed a motion for reconsideration on May 5, 2003.[2] Plaintiff then filed a Notice of Appeal on May 16, 2003.

To help determine damages in a different, unrelated lawsuit, plaintiff Coastal Delivery Corp. ("Coastal") filed a complaint under the Freedom of Information Act ("FOIA") seeking information regarding the number of examinations performed in 1998, 1999, 2000 and 2001 on merchandise arriving into the Los Angeles/Long Beach seaport generally, and the number of examinations performed at a particular warehouse specifically. Defendant, the United States Customs Service ("Customs"), maintains that the information is protected under the (b)(2) and (b)(7)(E) exemptions to FOIA because terrorists and others could use the information to discover the rate of inspection and then direct their containers to vulnerable ports.

## II. Jurisdiction

A Notice of Appeal divests the district court of jurisdiction over matters related to the appeal.[3] *See, e.g., Smith v. Lujan,*

---

1. For further discussion of the facts and the law in this case, please see this Court's March 18, 2003 Order.

2. Because plaintiff's motion was not filed within ten days of the judgment, plaintiff cannot base its motion on Rule 59(e). The Court assumes that the motion is based on Rule 60(b), which empowers a Court to vacate a judgment and reverse itself when it has made a mistake, when newly discovered evidence arises, or for any other reason justifying relief from the judgment. Fed. R. Civ. Proc. 60(b).

3. There are some exceptions to this rule, but the exceptions do not apply here. Fed. R.App. Proc. 4(A) provides that if certain motions are pending, the notice of appeal does not become effective until the order disposing of the last remaining motion is entered. This tolling of the divestment of jurisdiction applies to motions to alter or amend the judgment under Rule 59 and motions for relief under Rule 60(b) if filed within ten days of the judgment. There is no question that plaintiff did not file the motion within ten days of the judgment.

588 F.2d 1304 (9th Cir.1979). Though the majority of jurisdictions have held that a district court has the jurisdiction to deny, but not grant, a Rule 60(b) motion for reconsideration even after an appeal has been filed, in this circuit the district court does not have jurisdiction to act on the motion at all once the notice of appeal has been filed. The proper procedure is for plaintiff to "ask[ ] the district court to indicate if it wished to entertain the motion, or to grant it, and then (if [plaintiff thinks] it appropriate) [it] could [ ] move[ ] th[e] [appellate] court for remand of the case." *Smith v. Lujan,* 588 F.2d at 1307.

Therefore, the Court interprets plaintiff's motion as a request that the Court indicate its willingness to entertain or to grant plaintiff's motion for reconsideration. This request is denied.

On June 6, 2003 plaintiff filed a Narrowed Request for Records Pursuant to Its FOIA Complaint. In its Complaint, plaintiff stated that it had "an interest in obtaining records" of the number of examinations for NISCO Pacific Warehouse only for 1998, 1999, 2000 and 2001, as well as "statistical details containing control number totals" for examinations at the Port of Los Angeles. The narrowed request was for "records of the gross number of [ ] examinations at Nisco Pacific Warehouse for 1998, 1999 and 2000," or in the event there are no such documents, "documents relating to [ ] examinations performed at Nisco which contain information or numbers that, when compiled, would provide Plaintiff with the gross number of [ ] examinations" for the specified period.

III. Plaintiff's Narrowed Request

Citing judicial economy and efficiency, courts have held that it is proper for a plaintiff to submit a narrowed request during the course of the litigation. *See Trans–Pacific Policing Agreement v. U.S. Customs Service,* 177 F.3d 1022, 1026 (D.C.Cir.1999) (remanding the case and directing the district court to consider the narrowed request, as "both the agency and the District Court had an affirmative obligation to consider segregability *sua sponte.*"). However, in *Trans–Pacific Policing Agreement,* the narrowed request was for more limited information contained within documents that had already been identified. In the present case, the identified and redacted documents do not contain information pertaining to the Nisco warehouse alone–the information in the identified documents shows redacted numbers for the number of searches at the docks and the number of searches off-site. Plaintiff has argued that Nisco is the only off-site location, but Customs alleges there are other sites. Moreover, Customs alleges that there are no documents to satisfy plaintiff's narrowed request, and even if Customs could gather the information to create a record responsive to the request, it has no duty to do so. *See Yeager v. Drug Enforcement Administration,* 678 F.2d 315, 321 (D.C.Cir.1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain . . . . [an agency] need not obtain or regain possession of a record in order to satisfy a FOIA request.")

Summary judgment is appropriate in FOIA cases once documents at issue are properly identified. *See Miscavige v. IRS,* 2 F.3d 366 (11th Cir.1993). As there is a dispute as to whether the records exist, and the records have not been identified, summary judgment is not proper for the narrowed request at this time.

Furthermore, the Court would be inclined to deny plaintiff's request for reconsideration because the information requested, in combination with other information, could reasonably be used to circumvent the law, and therefore the

information was properly withheld under exemptions (b)(2) and (b)(7)(E) to FOIA.

IV. Conclusion

For the reasons stated above, plaintiff's request that the Court indicate its willingness to entertain or to grant plaintiff's motion for reconsideration is DENIED. IT IS SO ORDERED.